(No. 5725.   December 23, 1932.)

CHAS. JOHNSON, Appellant, v. W. F. YOUNG et al., as the Board of County Commissioners of Power County, Idaho, Respondents.

[23 Pac. (2d) 723.]

F. M. Bistline, for Appellant.

Bissell & Bird and A. Humphrey, for Respondents.

LEE, C. J.—On November 8, 1926, Power County, through its acting Board of Commissioners, W. F. Young, Frank R. Meadows and T. B. Evans, respondents herein, entered into a contract with one A. Humphrey, trustee, whereby the board employed said trustee "to perform certain services" on behalf of the county "and other persons and corporations." Claiming that he was a taxpayer of the county, appellant, Chas. Johnson, appealed from the order directing such contract, charging that the order and contract were

"illegal" and "prejudicial to the public interest." The district court dismissed the action, holding that appellant had failed to show himself a taxpayer. On appeal, this court held that, upon the record, he had "sufficiently established his status as taxpayer," reversed the order of dismissal and ordered the case reinstated. (*Johnson v. Young,* 49 Ida. 267, 287 Pac. 688.) It was tried anew before another judge, who rendered a decision adverse to appellant upon both the merits and failure to show himself a taxpayer. From that judgment he has appealed, assigning 13 specifications of error.

The court found that there was no evidence submitted either that appellant was a taxpayer of Power County or that the appeal had been brought to protect the public interest. It, therefore, concluded that appellant was not a taxpayer and that the appeal had not been prosecuted in the public interest. From other facts found it concluded that "It was within the power and authority of said county board to make the order and execute the contract in question."

Primarily, appellant attacks the first finding and conclusion upon two grounds, insisting that "an appellant is deemed to be a taxpayer and the burden of proof is on the respondent to prove that he was not," and that the evidence showed him to have been adjudicated a taxpayer of Power County. C. S., sec. 3509, provides that an appeal from the board's action can be taken only by "any person aggrieved thereby or by any taxpayer of the county," when he deems the board's action illegal or prejudicial to the public interests. In his denominated "Petition and Notice of Appeal," appellant after reciting: "Comes now the above named plaintiff and appellant and alleges," specifically based his right of appeal upon the propositions that he was a taxpayer of Power County and that the appeal was brought to protect the public interest. *A priori,* the court was wholly without jurisdiction to award him any relief until it became satisfied that the two prerequisites of the statute existed. Without having heard a word of evidence thereon, how could the court "deem" him to be a taxpayer any more than it could

"deem" his appeal to have been taken to protect the public interest? If the court could coolly assume such facts and proceed to judgment upon that assumption only, any Tom, Dick or Harry could prosecute an appeal from the board's action, in contempt of a statute plainly excluding them. The evidence appellant depends upon is exhibit 6, a certified copy of the opinion in *Johnson v. Young, supra,* where the court upon the facts before it, declared appellant at that time a taxpayer and held respondents obligated only to produce evidence "to make a *prima facie* case"; in other words, to establish the legal righteousness of their own cause, not to prove appellant's incapacity to function as party appellant. Furthermore, the evidence upon which the claimed adjudication rested was not before the judge who tried this case. The cause previously dismissed by Judge Adair was, by this court, ordered reinstated, and an entirely new trial had before Judge Brinck who had before him only such evidence as the parties saw fit to present. "Evidence taken and filed on the former trial is not a part of the evidence on the new trial, and cannot be considered, unless it is so provided by statute." (46 C. J. 463.) Especially is this true when another judge tries the case: the necessity of introducing such evidence cannot be obviated by substituting therefor a certified copy of a former opinion based upon it. What might have been the facts adduced at the first trial in 1927 could not be considered by the trial of facts submitted as existent in 1930. And being concerned only with the status of appellant, as determined by the facts adduced at the trial of 1930, we can do none other than hold what is obvious, an utter failure on the part of appellant to establish his qualifications as a party litigant.

Judgment affirmed; costs to respondents.

Givens and Varian, JJ., concur.

Budge and Leeper, JJ., took no part in the decision.

(June 17, 1933.)

MORGAN, J.—Appellant has filed a petition for rehearing, which was granted, and the entire case has been re-examined.

Power County, City of American Falls and Independent School District No. 1 of Power County, as parties of the first part, entered into the contract with A. Humphrey, as party of the second part, mentioned in the original opinion, which, although authorized by resolution of the Board of County Commissioners adopted November 8, 1926, bore date May 25, 1925, and it is therein recited that it was executed as of the last-mentioned date. That contract contains the following:

"Whereas, Said parties of the First part, respectively, obtained various judgments in the District Court of the Fifth Judicial District of Idaho, in and for Power County; some against the First National Bank of American Falls, Idaho, and others against the First State Bank of Rockland, Idaho, and still others against Evans Brothers Land & Livestock Company, a corporation; L. L. Evans, L. L. Evans, Jr., H. C. Allen, J. T. Fisher, S. N. Morris, H. P. Houtz, Alonzo Rowberry and D. W. Standrod, as bondsmen for one or the other of said banks, and,

"Whereas, The Fidelity & Deposit Company of Maryland, obtained a judgment against said L. L. Evans, H. C. Allen and L. L. Evans, Jr., in Case No. 1588, and Federal Reserve Bank of San Francisco, Cal. obtained a judgment against said Evans Brothers Land & Livestock Company, in Case No. 1589, and,

"Whereas, The said judgments of the parties of the First part were obtained in Cases Nos. 1563, 1565, 1566, 1569, 1570, 1571, 1572, 1573 and 1574 and all of said judgments, including those obtained in Cases Nos. 1588 and 1589, were obtained in the District Court of the Fifth Judicial District of Idaho, in and for Power County, and, each of said

cases of said parties of the First part was begun by attachment, and the judgment in each and all of said Cases, including Nos. 1588 and 1589, were obtained under such circumstances and within such time, that it is believed that each of said Plaintiffs is entitled to prorate in the proceeds of the property of some of said Defendants, under the law, and

"Whereas, Executions were duly issued on some of said judgments, and levies made, and execution sales duly had thereunder, on the 17th day of December, 1924, of the properties previously attached in said Cases, and,

"Whereas, said party of the Second part was employed by said parties of the First part, to appraise the properties to be sold on execution on December 17th, 1924, and then to buy in, in his own name, as Trustee, for said parties of the First part, and said Fidelity & Deposit Company of Maryland, and said Federal Reserve Bank of San Francisco, the properties then to be sold, by virtue of said judgments and said executions issued thereon, and,

"Whereas, Said party of the Second part did, on said December 17th, 1924, buy in, in his own name as Trustee for all of said parties, including said Fidelity & Deposit Company and said Federal Reserve Bank of San Francisco, all of said properties then sold; being all of the properties originally attached in said Cases, respectively, or any or either thereof, and has duly made, executed and delivered his declaration of trust therefor, and,

"Whereas, Said party of the Second part, at the conclusion of said sale, on said December 17th, 1924, at the request and by the direction and instruction of said parties of the first part, and, with the consent and acquiescence of said Fidelity & Deposit Company and said Federal Reserve Bank of San Francisco, Cal., took charge of said properties and assumed the exclusive charge, management and control of the same, and then undertook to do and conduct all business in connection therewith, including the disposition thereof, and,

"Whereas, Thereafter, and on the 20th day of May, 1925, the verbal agreement entered into by and between the parties hereto, immediately prior to and on the said 17th day of December, 1924, was reduced to writing and signed by the parties hereto, with the understanding and agreement that, if occasion arose, said written contract then entered into, should be modified, changed and enlarged so as to give said party of the Second part such power and authority as might be deemed advisable or necessary, to do any and all acts and things he might, in his judgment, wish to do, to conduct and handle said business for the best interests of said parties of the First part, and the others claiming a right of pro ration in the proceeds of any of the properties theretofore, or which might thereafter be sold, under said judgments, or any of them, and,

"Whereas, It was believed by said parties of the First part, on said May 20th, 1925, that they had discovered, attached and sold all of the properties owned by said Defendants, in said various suits, and that all said Trustees would be required to do, was to conserve, care for and collect the rents, issues and profits of the properties bought by him, as Trustee, on said December 17th, 1924, until such time as said properties might be redeemed or disposed of, and, that ten days per month would be ample time for the conduction of said business, and,

"Whereas, At the time said contract was reduced to writing, on May 20th, 1925, said party of the Second part advised said parties of the First part that he had discovered some property of said Defendants subject to levy and sale, and that he believed he could discover other properties of considerable extent and value, out of which they could realize portions of the balances of their judgments, and,

"Whereas, A short time after said May 20th, 1925, said party of the Second part discovered and then notified and told said parties of the First part that he had discovered several hundred acres of property belonging to said Defendants, or some of them, subject to levy and sale, and he then advised that it might be wise, and greatly to the interests

of said parties of the First part, and others claiming said right of pro ration, to purchase the several judgments obtained by D. W. Church, Receiver, against L. L. Evans and against L. L. Evans, Jr., and against H. C. Allen, in the United States District Court of Idaho, and, then requested that said contract be modified, changed and enlarged, so that he would have full and unlimited power and authority to collect the balances of said judgments, obtained by said parties of the First part, and others claiming said right of pro ration, in any way or manner the Law might afford, and, to purchase said Church judgments, and a certain small judgment theretofore obtained by one Backman, and others, against said Evans Brothers Land & Livestock Company, and to do and perform any and all other acts and things advisable or necessary, in his judgment; to collect the balances of said judgments and enforce the rights and conserve the interests of said parties of the First part, and others claiming said right of pro ration, and,

"Whereas, Said party of the Second part was given full and unlimited power and authority, and was instructed to proceed with the collection of said judgments, and to have issued and levied executions upon and sell any property of said Defendants, or any of them, which he could find and to purchase said Church judgments, and said small judgment obtained by one Backman, and others, for the best interests of said parties of the First part and the others claiming said right of pro ration, if it became advisable in his judgment to do so, and, to do any and all things he considered advisable or necessary in the premises, the same as tho said properties, said judgments and the business of conserving and advancing the interests of said parties of the First part, were his own, and,

"Whereas, Said party of the Second part has been acting under said enlarged agreement, authority and power since a few days subsequent to said May 20th, 1925, and not under said written contract of that date, and,

"Whereas, It has become necessary for the proper conduction of said business, and the conservation and advance-

ment of the interests of said parties of the First part, and others claiming said right of pro ration, for said party of the Second part to devote all of his time to said business, and to make numerous trips to the various properties purchased and held by him, and to Pocatello, Fort Hall and other places, in the interest of said trust;

"Now, therefore, for the purpose of deducing said verbal agreement entered into by the parties hereto, a few days after May 20th, 1925, to writing, to the end that there may be no misunderstanding regarding the relations of the parties hereto, and the authority and powers given to and vested in said party of the Second part, as such Trustee, and exercised by him for the benefit of said parties of the First part, and others claiming said right of pro ration, it is hereby agreed as follows:

"1st. That said party of the Second part was employed as Trustee for said parties of the First Part, and the others claiming said right of pro ration, and has been acting as such Trustee, constantly, since said sale of December 17th, 1924.

"2nd. That the purpose of said employment was to have said party of the Second part, as such trustee, manage, handle, conserve, control and dispose of any and all properties bought by him as such Trustee, at said sale of December 17th, 1924, or, which might thereafter be acquired by him as such Trustee; in the collection of the balances of said judgments, or otherwise, and to collect the balances of said judgments of all parties interested in said trust, and, if deemed necessary or advisable, to purchase judgments, certificates of sale, and other liens or encumbrances on any of the properties which he bought at said sale of December 17th, 1924, or any properties which he might thereafter acquire as such Trustee; and to do and perform any and all acts and things which he might deem advisable or necessary to conserve, protect and advance the interests of said parties of the First part, and the others claiming said right of pro ration, the same as tho said business was his own.

"3rd. That said party of the Second part has accepted said trust and is now, and has been since the 17th of December, 1924, devoting his entire time thereto, and he hereby agrees to continue as such Trustee, and, if necessary or advisable, to devote his entire time to said trust, and to use his best skill and ability in conserving and advancing the interests of said parties of the First part, and others claiming said right of pro ration, and in the collection of said judgments, and the control, management and disposition of any and all properties which he may now have, or hereafter acquire in the course of his trusteeship.

"4th. That said party of the Second part shall hold title in his name as Trustee, to said properties purchased by him on said December 17th, 1924, and to any and all properties which he may purchase or acquire in the course of his trusteeship, and shall sell and dispose of said properties as and when an advantageous sale thereof can be made, and that any and all properties which he may purchase or acquire in the course of his trusteeship subsequent to said sale of December 17th, 1924, shall immediately upon his purchase thereof, come within and be governed and controlled by the terms of his declaration of trust heretofore executed and delivered, until such time as a proper declaration of trust is executed and delivered for said properties purchased subsequent to said December 17th, 1924.

"5th. That said party of the Second part shall furnish said parties of the First part a complete statement of all receipts and disbursements each three months after the date of this contract, and that in said statements he may take credit for necessary expenditures for postage, office supplies, certified copies, recording fees, etc., in the conduction of the business of said trust.

"6th. That said party of the second part shall furnish to said parties of the First part from time to time, a bond for the faithful accounting of all moneys coming into his hands as Trustee, in such an amount, and at such time, as the said parties of the First part shall require, the cost and expense of said bond to be paid out of said trust fund.

"7th. That the Power County Bank of American Falls, Idaho, is hereby designated by said parties of the First part, as the depository for said trust funds, and said party of the Second part shall deposit all of said funds in said bank, in his name, as Trustee.

"8th. That said party of the Second part shall declare dividends and distribute to the parties of the First part, and the others entitled to prorate in said funds, the moneys in his hands as Trustee, in the proportions to which they are entitled, respectively, as often as there are sufficient funds. to warrant such distribution, or, as often as he may be requested to do so, by said parties of the First part.

"9th. That this trusteeship shall continue, and the said party of the Second part shall have such time as shall be necessary or advisable, to sell and dispose of any and all properties to which he may have acquired title, as such Trustee, without sacrificing the same; provided that said parties of the First part shall have the right to order a sale of said properties, or any thereof, at such time and price, as all of the parties entitled to prorate in said trust fund, shall agree upon.

"10th. That said party of the Second part shall be allowed as full compensation for all services, legal or otherwise, rendered and to be rendered by him, and expenses incurred or paid as such Trustee herein, out of the moneys coming into his hands as such Trustee, Fifteen (15) Per Cent of the amount of money which he shall have from time to time, to distribute and pay as dividends to the parties entitled thereto; said compensation to be taken out of said moneys before said distribution is made;

"And, said compensation of Fifteen (15) per cent is to apply to, and be computed upon such moneys as said Trustee shall have to distribute from time to time, subsequent to his first dividend declared and paid under and in accordance with his account and report heretofore made and dated July 26th, 1926, and said Fifteen (15) Per Cent shall in no way apply to said first dividend paid in accordance with said account and report dated July 26, 1926.

"11th. All moneys which may have been advanced to said party of the Second part since May, 1925, under said contract of that date, relating to the advancement of $75.00 per month, shall be deducted from the first compensation to which said party of the Second part may be entitled, under the terms of this agreement.

"12th. That, as said Trustee has to perform a large amount of services in managing, controlling and disposing of said properties held by him as Trustee, and in seeking for, selling and controlling other properties, in the general business of conserving and advancing the interests of said parties of the First part, and others claiming said right of pro ration, and said party of the Second part has to wait for the payment of his compensation until such properties can be disposed of, and the money for such purpose obtained in that way, and, as this condition is liable to maintain for some time, and the party of the Second part is paying his own expenses; this contract is, and shall be construed to be in all respects, a contract with an interest in said party of the Second part."

Appellant herein appealed to the district court from the action of the board of county commissioners whereby the county entered into said contract and from the order directing the chairman and clerk of the board to sign the same in execution thereof. A trial in the district court resulted in a decree that the contract was, and is, legal and valid; affirming and approving the same, and denying the appeal and awarding costs against appellant. This appeal is from that decree.

In the former appeal of this case (49 Ida. 267, 287 Pac. 688) this court said:

"Immediately upon the opening of the trial in 1927, counsel for the board urged that it was incumbent upon appellant to first show his qualification as a taxpayer as a condition precedent to his right to so appeal. Over appellant's objection the court indicated it was, and after some evidence was introduced held that appellant was not a taxpayer under

C. S., sec. 3509 (I. C. A., sec. 30–1108), and entered a judgment of dismissal.

"Two questions are presented: Is appellant a taxpayer, and what is the correct procedure on such an appeal."

The court answered the first question in the affirmative and, with respect to the second, said:

"This court has announced that an appeal from an order of the Board of County Commissioners must be tried anew in the district court, and that in said trial the board or the person in whose favor a claim has been allowed has the affirmative and must produce evidence to make a *prima facie* case. (*Prothero v. Board of County Commrs.*, 22 Ida. 598, 127 Pac. 175.)"

This court not only adjudicated appellant's status as a taxpayer, but the only question of procedure about which the parties differed was as to who had the burden of proving that status, and the court answered that question as above quoted. That answer cannot be construed to mean anything but that the burden was on respondents to prove appellant was not a taxpayer, if they relied on that to defeat the appeal, and it is the law of the case, which governs us and the parties litigant. A number of Idaho cases announcing and sustaining this rule will be found assembled in *Garvin v. First Nat. Bank*, 50 Ida. 491, 298 Pac. 359.

The opinion in this case, filed December 23, 1932, does not correctly state the law and is vacated, set aside and held for naught.

The rules of law hereinafter quoted are applicable to the contract under consideration.

Article VIII, sec. 4, and art. XII, sec. 4, of the Constitution of Idaho are as follows:

Article VIII, sec. 4: "No county, city, town, township, board of education, or school district, or other subdivision, shall lend, or pledge the credit or faith thereof directly or indirectly, in any manner, to, or in aid of any individual, association or corporation, for any amount or for any purpose whatever, or become responsible for any debt, contract or lia-

bility of any individual, association or corporation in or out of this state."

Article XII, sec. 4: "No county, town, city or other municipal corporation, by vote of its citizens or otherwise, shall ever become a stockholder in any joint stock company, corporation or association whatever, or raise money for, or make donation or loan its credit to, or in aid of, any such company or association: provided, that cities and towns may contract indebtedness for school, water, sanitary and illuminating purposes: provided, that any city or town contracting such indebtedness shall own its just proportion of the property thus created and receive from any income arising therefrom, its proportion to the whole amount so invested."

Idaho Code Annotated, title 30, chapter 5, relates to counties as bodies corporate and contains, among others, the following sections:

Section 30-501. "Every county is a body politic and corporate, and as such has the powers specified in this title or in other statutes, and such powers as are necessarily implied from those expressed."

Section 30-502. "Its powers can only be exercised by the board of county commissioners, or by agents and officers acting under their authority, or authority of law."

Section 30-504. "It has power:

"1. To sue and be sued.

"2. To purchase and hold lands within its limits.

"3. To make such contracts, and purchase and hold such personal property, as may be necessary to the exercise of its powers.

"4. To make such orders for the disposition or use of its property as the interests of its inhabitants require. . . . . "

Section 30-505. "No county must in any manner loan or give its credit to or in aid of any person, association or corporation unless it is expressly authorized by law so to do."

Idaho Code Annotated, title 30, chapter 7, defines and prescribes the powers and duties of boards of county commissioners, and among these powers and duties are those stated in secs. 30-707 and 30-708. Section 30-707 is as follows:

"To purchase, receive by donation, or lease any real or personal property necessary for the use of the county; preserve, take care of, manage and control the county property, but no purchase of real property must be made unless the value of the same has been previously estimated by three disinterested citizens of the county, appointed by them for that purpose, and no more than the appraised value must be paid therefor."

Among the powers and duties of boards of county commissioners prescribed by sec. 30–708 are the following:

"To sell or offer for sale at public auction at the courthouse door, after thirty days' previous notice given by publication in a newspaper of the county any property, real or personal, belonging to the county, not necessary for its use, and such sale of real property may be made by the board of county commissioners, either for cash or upon such terms as the board of county commissioners may determine, and the same must be sold to the highest bidder. . . . . If such property is sold on terms the board of county commissioners may contract for the sale of the same for a period of years not exceeding five years, with an annual rate of interest on all deferred payments not to exceed six per cent per annum. The title to all property sold on contract shall be retained in the name of the county until full payment has been made by the purchaser. . . . . The board of county commissioners shall have authority to cancel any contract of sale if the purchaser shall fail to comply with any of the terms of such contract, and retain all payments paid thereon."

In *Gorman v. County Commrs.*, 1 Ida. 553, the Supreme Court of Idaho Territory said:

A board of county commissioners is a tribunal created by statute with limited jurisdiction and only *quasi*-judicial powers, and cannot proceed except in strict accordance with the mode provided by statute. It has no right or authority to adopt any other mode than that required or provided by statute. The statute is its guide, and a strict adherence to it is as essential as that of a mariner to his compass. The

whole tenor of the text-books and the authorities is to this effect. There is and can be no safety in any other rule.''

In *Prothero v. Board of County Commrs.*, 22 Ida. 598, 127 Pac. 175, the second section of the syllabus, which is by the court, is as follows:

''The board of county commissioners has only such powers as are expressly or impliedly conferred upon it by statute.'' (See, also, *McCracken v. City of San Francisco*, 16 Cal. (5 Pac. St. Rep.) 591; *Grogan v. San Francisco*, 18 Cal. (6 Pac. St. Rep.) 590; *Llano Co. v. Knowles*, (Tex. Civ. App.) 29 S. W. 549.)

''A county may take and hold property for such purposes as are authorized by statute, . . . . The power of a county to acquire and to hold real property being derived from statutes, statutory provisions as to the board or officer by whom such power is to be exercised must be strictly followed. Also, so far as they are applicable, statutory provisions as to the mode to be pursued are not simply directory, but operate as a limitation on the power to purchase, and must be followed.'' (15 C. J. 532, sec. 217.)

It is said in 15 C. J. 537, sec. 221:

''In accordance with the general rule heretofore stated, that county boards or county courts have no powers other than those conferred expressly or by necessary implication, such courts or boards have no power to rent or lease property or franchises owned by the county, in the absence of statutory authority so to do; and where they do possess statutory authority, it must be strictly pursued, or the lease will not be binding.'

In the same volume, 538, sec. 225, this rule is to be found:

''The power which a county possesses to alienate its property must not only be exercised by the proper officer, but, where the mode is prescribed, the same must be followed or a conveyance of such property will be void.''

*Franzke v. Fergus County*, 76 Mont. 150, 245 Pac. 962, is a Montana case wherein an injunction was sought to prevent the county from entering into a contract to convey land

upon payment of the purchase price in instalments. The Supreme Court of Montana said:

"It is a general rule that whenever a power is conferred upon the board of county commissioners, but the mode in which the authority is to be exercised is not indicated, the board in its discretion may select any appropriate mode or course of procedure. *Morse v. Granite County,* 44 Mont. 78, 119 Pac. 286. This rule might have been invoked in a case of this character arising prior to July 1, 1895, but the insuperable difficulty which confronts Fergus County is that our present statutes do prescribe the mode of procedure and the terms and conditions which must be observed in order to make a valid sale of county property. By the express terms of subdivision 10 of section 4465 above, a sale of county property can be made ónly (1) at public auction, (2) at the courthouse door, (3) after 30 days' previous notice, (4) to the highest bidder, (5) for cash. Since the Legislature has seen fit to indicate with particularity the essential steps necessary to be taken, and has prescribed the precise mode of procedure, the statute must be held to exclude any other. *Expressio unius est exclusio alterius.*"

The Supreme Court of California in *House v. Los Angeles County,* 104 Cal. 73, 37 Pac. 796, said:

"We are of the opinion that the board of supervisors, in the absence of positive law authorizing it so to do, cannot, in any case, appoint an agent to exercise powers which it cannot itself exercise. In the exercise of powers conferred upon it, it may appoint agents to discharge ministerial duties not calling for the exercise of reason or discretion, but cannot go beyond this, and delegate to others duties, the discharge of which, calling for the use of reason and discretion, are regarded as public trusts. *Scollay v. Butte Co.,* 67 Cal. 249, 7 Pac. 661."

In 15 C. J. 465, sec. 116, it is said:

"The right of a county board to delegate its authority depends on the nature of the duty to be performed. Powers involving the exercise of judgment and discretion are in the

nature of public trusts and cannot be delegated to a committee or agent.''

The Supreme Court of Montana, in *Franzke v. Fergus County,* above cited, said:

''The fact that the contemplated action may be in the best interest of the county is not an admissible argument. The doctrine of expediency does not enter into the construction of statutes.''

The attempted authorization to use judgments belonging to Power County in the purchase of property to be owned by it, the City of American Falls, Independent School District No. 1, the Fidelity & Deposit Company of Maryland and Federal Reserve Bank of San Francisco, and to be held in trust for their use and benefit, the use of its property and money in carrying out the agreement evidenced by this contract, to the extent of benefits to be derived by said corporations, other than the county, and the placing of its property in the hands of a trustee, to be dealt with by him for the benefit of said corporation, is a loan of the credit of the county in violation of Idaho Constitution, art. VIII, sec. 4, and art. XII, sec. 4, and Idaho Code Annotated, sec. 30–505. (*Atkinson v. Board of Commrs.,* 18 Ida. 282, 108 Pac. 1046, 28 L. R. A., N. S., 412; *School Dist. No. 8 v. Twin Falls etc. I. Co.,* 30 Ida. 400, 164 Pac. 1174; *Boise-Payette Co. v. School Dist. No. 1,* 46 Ida. 403, 268 Pac. 26; *White v. Pioneer Bank & Trust Co.,* 50 Ida. 589, 298 Pac. 933.) The fact that the city and school district have also violated the Constitution, by their part in the contract, does not tend to validate the act of the county commissioners in entering into it.

By this contract the county commissioners have attempted to delegate to a trustee power ''to manage, handle, conserve, control and dispose of'' county property, which has been placed in his hands in trust, and to authorize him to acquire and to hold in trust for the county other property ''which he may purchase or acquire in the course of his trusteeship,'' and to ''sell and dispose of said properties as and when an advantageous sale thereof can be made,'' ''and to do and

perform any and all acts and things which he might deem advisable or necessary to conserve, protect and advance the interests of said parties of the First part, and the others claiming said right of pro ration, the same as tho said business was his own.'' This is an attempt to delegate powers which the board of county commissioners does not possess, in that it assumes to authorize the trustee to purchase property, regardless of the lack of county necessity therefor, without having the value thereof previously estimated, and without being bound by the estimate, as required by sec. 30–707 of our Code; also to authorize the trustee to sell and dispose of property of the county without conforming to sec. 30–708 thereof, which prescribes the manner of sale, place of sale and notice of sale of such property.

Furthermore, the board of county commissioners has, by this contract, attempted, in violation of law and of the public policy of the state, to delegate powers which it possesses with respect to county property, and which involve the exercise of judgment and discretion. It has attempted to place property of the county beyond its control and beyond the control of its successors in office, and to make the time of disposal thereof and the price at which it shall be sold, subject to the agreement of those who are entitled to pro rate in the trust fund. The board also agrees that ''this contract is and shall be construed to be in all respects a contract with an interest in said party of the second part.''

Because the court has criticised only portions of this contract, it is not to be understood as approving other portions of it, nor is it to be understood as deciding the contract does not violate the law in other particulars than those mentioned. The entire instrument is held to be void.

The judgment of the trial court is reversed and the cause is remanded, with instructions to reverse the action and order of the board of county commissioners appealed from. Costs are awarded to appellant.

Wernette, J., concurs.

Givens, J., dissents.

HOLDEN, J.; Concurring.—I concur in the foregoing opinion in so far as it holds that a board of county commissioners cannot delegate to another any power it possesses, the exercise of which involves the judgment and discretion of the board.

BUDGE, C. J., Concurring Specially.—I concur in the conclusion reached in the majority opinion. I am of the opinion that the contract is void for the reason, among others, that it constitutes an unauthorized delegation of power in that it authorizes the party of the second part (Humphrey) "to do and perform any and all acts and things *which he might deem advisable* or necessary . . . . the same as tho said business was his own," and other language of similar and broader import set out in numerous provisions of the contract. The rule, applicable alike to counties as well as cities, would seem to be as stated in *Smith v. Morse*, 2 Cal. 524, 538:

"Again, the common council must exercise the functions imposed upon them by their charter; and have no power to delegate them to others. The power to sell, granted to them, does not include the power to make a deed of trust, or place the property committed to their custody, in charge of others, for the term of three years, with power to sell, as *they* may *deem advisable*."

Also, as held in *Mullarky v. Town of Cedar Falls*, 19 Iowa, 21, with respect to an incorporated town:

"But such corporation has no power to execute a deed of trust conveying a bridge erected by the corporation to trustees, authorizing the charging of tolls thereon, and pledging the bridge and the tolls collected thereon for the payment of the debt created for its construction."

To similar effect see: *Scollay v. County of Butte*, 67 Cal. 249, 7 Pac. 661; *State v. Carrel*, 103 Ohio St. 50, 132 N. E. 161; *Egan v. San Francisco*, 165 Cal. 576, 133 Pac. 294; Ann. Cas. 1915A, 754; *Heydenfeldt v. Hitchcock*, 15 Cal. 514; *House v. Los Angeles County*, 104 Cal 73, 37 Pac. 796;

McQuillin on Municipal Corporations, 2d ed., vol. 1, sec. 393; 7 Cal. Jur. 512. By the contract before us the board of county commissioners has attempted to delegate to Humphrey the collection of the judgments in favor of the county. Such duty is imposed upon the commissioners themselves and involves the exercise of judgment and discretion and cannot be delegated to others and any contract attempting so to do is *ultra vires* and void. There is no valid reason shown why the board of county commissioners itself could not carry out this duty, particularly in view of the fact that it had the aid of the prosecuting attorney and special counsel employed for that purpose, nor does any valid reason appear necessitating the appointment of an agent clothed with unlimited powers to perform this duty.

Calling particular attention to the following provision of the contract in question, wherein it is provided:

"That this trusteeship shall continue, and the said party of the second part shall have such time as shall be necessary or advisable, to sell and dispose of any and all properties to which he may have acquired title, as such Trustee, without sacrificing the same; provided that said parties of the first part shall have the right to order a sale of said properties, or any thereof, at such time and price, as all of the parties entitled to prorate in said trust fund shall agree upon."

this is also an unauthorized delegation of power. Under the terms of the foregoing provision the trusteeship cannot be terminated and no sale of the property can be made unless all of the parties entitled to prorate in said trust fund shall agree upon such sale. It is sought to bind incoming boards of county commissioners to retain the trustee without any definite limitation except the happening of an uncertain and perhaps impossible event. In other words, unless all of the parties, the county, the municipalities, Fidelity & Deposit Company of Maryland and Federal Reserve Bank of San Francisco reach a mutual understanding or agreement to sell or wind up the trust, the board of county commissioners is helpless. When it is further considered

that the trusteeship, as shown by the contract, had its inception in December, 1924, and three boards of county commissioners have been elected since the execution of the contract and that the trusteeship has functioned for over eight years and may continue to so function *ad infinitum,* it would seem to me that in such circumstances, the contract is void as against public policy.

The contract further provides: "this contract is, and shall be construed to be in all respects, a contract with an interest in said party of the second part."

In other words, the board of county commissioners undertook to appoint Humphrey trustee with an interest in the property held by him in trust, in which the county had an interest. Clearly no authority can be found authorizing the board of county commissioners to convey an interest in county property, except in the manner as provided by law for the sale of county property.

If I understand respondents correctly, they take the position that the validity of this contract was upheld in *Evans v. Humphrey,* 38 Fed. (2d) 984. I do not so construe the opinion to so hold. The court refused to pass upon the question, saying:

"The only question raised by the judgment debtor in the trial court and in this court is as to the authority of A. Humphrey to act as trustee for the municipal corporations for which he claims to be trustee. We do not see how the appellant is concerned with this question. . . . . We need not decide the contention raised by the appellant, to the effect that the contracts with the municipal corporations under which Mr. Humphrey purported to be acting were *ultra vires,* for in any event it is immaterial to the judgment debtor whether Mr. Humphrey was acting individually or as trustee."

In my opinion the constitutional provisions and authorities cited construing the same, referred to in the majority opinion and relating to the loaning or pledging of the credit of a county, have no application to the facts of this case.

Since the opinion of the majority on rehearing reverses the former opinion and becomes the law of the case, it follows, without the necessity of direct reference thereto, that the former opinion is no longer the law of the case.

While I have only discussed a limited number of the objections to which this contract is subject, I have carefully examined the entire contract and find myself unable, by reason of its numerous objectionable and void features, to find any ground upon which it can be upheld.

Petition for rehearing denied.