665 P.2d 1046

**BINGHAM COUNTY COMMISSION,
Plaintiff-respondent, Cross-appellant,**

v.

**INTERSTATE ELECTRIC COMPANY, A
DIVISION OF THE L.E. MYERS CO.,
Defendant-appellant, Cross-respondent.**

No. 14177.

Supreme Court of Idaho.

June 22, 1983.

Robert M. Anderson of Berman & Anderson, Salt Lake City, Utah, David R. Gallafent of Merrill & Merrill, Pocatello, for defendant-appellant, cross-respondent.

Stephen Roth of Snow, Christensen & Martineau, Salt Lake City, Utah, Jay H. Stout of Stout & Moss, Blackfoot, for plaintiff-respondent, cross-appellant.

BAKES, Justice.

The major question presented in this appeal is whether a county can agree to submit a disputed claim to binding arbitration without violating the claims procedures mandated by I.C. § 31–1501 et seq. Also presented are questions concerning the scope of review of an arbitration award, and the power of an arbitrator to award attorney fees. We reverse in part and affirm in part.

In 1976, Bingham County, in anticipation of a needed remodeling and expansion of Bingham Memorial Hospital, retained as its consultant the architectural firm, Design West. Design West in turn advised Bingham County to hire Christiansen Bros., a contracting firm, as construction manager for the project. This arrangement resulted in Bingham County acting as its own contractor, with Christiansen Bros. acting as its manager.

The defendant respondent Interstate Electric Co. (I.E.C.) contracted with the Bingham County Commission to provide all electrical work on Phase II of the project. The bid accepted by the county was for $560,000. No projected completion date had been set by the county before the bids were entered. A contract was signed on April 15, 1977, and provided that I.E.C. would begin work as of that day, and the project would be completed by September 1, 1978. The contract was a standard AIA form supplied by the architectural firm, Design West.

I.E.C. actually began work on the project in June of 1977. Work progressed slowly.

I.E.C. asserted that this delay occurred because it could not complete its work until other parts of the construction were completed. Other problems developed, causing confusion and disorganization. The result, according to J.E.C., was delay and inefficient use of the work force, resulting in cost overruns and increases. The completion date was extended to December 4, 1978. However, work on the project was not actually completed until late 1979.

Bingham County alleged that they had done everything in their power to keep the job moving, but that delays were caused by other contractors, delay in material delivery, the complexity of the job, and by I.E.C. itself. I.E.C. complained several times. Several letters are included in the record as exhibits, dated October 20, 1977; March 16, 1978; September 25, 1978; and January 15, 1979, requesting change orders to cover cost overruns. No change orders were ever issued. On March 9, 1979, I.E.C. wrote to the Bingham County Commission, stating its claim for damages and requesting a meeting. At that meeting, with all parties and their attorneys present, I.E.C. presented a claim for additional compensation for the overruns. The commission met privately to discuss the claim, then notified I.E.C. that its claim was denied.

I.E.C. then sought binding arbitration pursuant to the construction contract.[1] Arbitration hearings were conducted in November of 1979. Bingham County participated without objection in the arbitration proceeding. I.E.C. presented evidence indicating that its cost overruns were due to delays caused by Bingham County. Bingham County claimed the delay was due to factors beyond their control, that the delays were reasonable, but that in any event I.E.C. had not been damaged by the delays. On February 9, 1980, the arbitrator award-ed I.E.C. $100,000 plus various fees and expenses.

On May 9, 1980, Bingham County filed a motion in district court seeking to vacate the arbitration award pursuant to I.C. §§ 7–901 *et seq.,* the Uniform Arbitration Act. The only ground for vacating the award stated in the motion was, "In making the award the arbitrator exceeded his powers under the contract between the parties." On June 6, 1980, I.E.C. responded to Bingham County's motion and filed their own motion asking the district court to confirm the award.

On September 19, 1980, Bingham County moved to amend its motion to add an additional ground, that the arbitrator was biased. I.E.C. argued this motion was not timely since it was not filed within the 90-day limit prescribed by I.C. § 7–912(b). The district court agreed with I.E.C. and denied leave to amend.

At the hearing on the motion to confirm the award on January 5, 1981, Bingham County orally asserted another ground for vacating the award. It argued that the Board of County Commissioners was barred by Idaho law from submitting a claim against a county to arbitration because it would circumvent the taxpayer appeal procedure provided in I.C. §§ 31–1501 *et seq.* I.E.C., on the other hand, argued that the oral motion was not timely, but in any event not a proper ground for vacating the award. The district court, on April 7, 1981, while indicating it would otherwise confirm the award of arbitration in a normal case, agreed that the Bingham County Commission was not entitled under Idaho law to submit a county claim to arbitration and vacated the arbitration award. Appellant I.E.C. appeals from that ruling. Respondent Bingham County also appeals from the district court's ruling that, were it not for

---

1. The section of the contract between the parties providing for arbitration reads as follows:

 "All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

Bingham County's inability to submit to arbitration, the award must be confirmed.

## I

■ Appellant asserts that Bingham County's oral motion to vacate the arbitration award was untimely because not asserted within ninety days after delivery of the award. I.C. § 7–912(b), a part·of the Uniform Arbitration Act, in referring to motions to vacate arbitration awards, provides:

"An application under this section shall be made within ninety (90) days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud or other undue means, it shall be made within ninety (90) days after such grounds are known or should have been known."

A party seeking to vacate an arbitration award must meet this statutory requirement. Cases decided under the Uniform Arbitration Act[2] make it clear that this statutory time limitation is strictly construed and *must* be complied with before a court can vacate any award. *See Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co.,* 628 F.2d 1023 (7th Cir.1980), cert. den. 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111; *Gasworkers Local No. 80 v. Michigan Consolidated Gas Co.,* 503 F.Supp. 155 (D.C.Mich.1980); *Mid-America Regional Bargaining Ass'n v. Modern Builders Industrial Concrete Co.,* 101 Ill.App.3d 83, 56 Ill. Dec. 606, 427 N.E.2d 1011 (1981); *Cutler Ass'n v. Merrill Trust Co.,* 395 A.2d 453 (Me.1978); *Hatch v. Double Circle Ranch,* 22 Ariz.App. 124, 524 P.2d 958 (1974). This is true even if the party seeking to vacate the award asserts a valid ground under the act. *State Dept. of Administration v. Sightes,* 416 N.E.2d 445 (Ind.App.1981). A court cannot extend this ninety day period. *Schroud v. Van C. Argiris & Co.,* 78 Ill. App.3d 1092, 34 Ill.Dec. 428, 398 N.E.2d 103 (1979). Because the time limit under the

act is strictly construed, failure to comply with that time limit raises an absolute bar to a motion to vacate.

■ The record shows that the arbitrator issued his decision on February 9, 1980. Bingham County did not raise the ground asserted here until January 5, 1981. This was nearly eleven months after the arbitrator's decision. Bingham County thus did not comply with the ninety day limitation imposed under the Uniform Arbitration Act in asserting its *ultra vires* ground for vacation of the award. Its oral motion, based on this ground, was untimely and should have been denied by the trial court.

The district court also erred in vacating the award on the ground asserted by Bingham County. Essentially, Bingham County argued that the county commission's action in submitting this claim to arbitration was an act beyond its power and thus void and of no effect. The district court agreed with Bingham County, holding:

"[O]nly the board of county commissioners can allow a claim, and if allowed, a taxpayer may appeal, and the district court has exclusive jurisdiction to determine the merits of the claim; if disallowed, the claimant may sue the county again exclusively in the district court. There is no room for binding arbitration, whether it stems from a provision in a construction contract, or is simply referred to binding arbitration as a whim of the commissioners."

In making its determination, the district court relied on an 1897 decision of the Indiana Supreme Court. *Myers v. Gibson,* 147 Ind. 452, 46 N.E. 914 (1897). *Myers* is the only case called to our attention holding that a statutory claim and taxpayer appeal process prevent a county commission from submitting a claim to binding arbitration. In *Myers* a taxpayer sought to overturn the decision of a board of county commissioners to pay an arbitration award. The taxpayer

---

**2.** Many states have adopted the Uniform Arbitration Act. Court decisions interpreting our own provisions of that act are almost non-existent. Thus, it is helpful, and very persuasive,

to look to the decisions of our sister states interpreting identical statutory language. *See Loomis, Inc. v. Cudahy,* 104 Idaho 106, 656 P.2d 1359 (1982).

argued that the county commissioners lacked the power to submit a claim to arbitration. The court ruled for the taxpayer, and vacated the award.

■ The *Myers* decision was based on premises not applicable to Idaho law. The *Myers* court held:

"The boards of commissioners have no powers except such as are expressly or impliedly given by statute. Their powers are limited, and must be exercised in the manner provided by statute .... The power exercised by the board of commissioners in this case is not expressly given by statute, but on the contrary, is at least impliedly denied."[3]

■ Despite that 1897 ruling in Indiana, it is now a well settled rule that in the absence of a statutory prohibition to the contrary, a county has the power to submit to arbitration any claim asserted by or against it. *See Brazoria County v. Knutson,* 142 Tex. 172, 176 S.W.2d 740 (1943); *Lindon City v. Engineers Construction Co.,* 636 P.2d 1070 (Utah 1981); *Thorgaard Plumbing & Heating Co. v. County of King,* 71 Wash.2d 126, 426 P.2d 828 (1967). *See also* Annot., Power of Municipal Corp. to Submit to Arbitration, 20 A.L.R.3d 569 (1968). This includes the power of a county to agree to arbitrate any disputes that might arise in the future between two parties to a contract. Annot., *supra.* Normally, a county has very broad powers. The power to submit to arbitration has been specifically held to arise out of the power of a county to contract, and to sue and be sued. *Lindon City v. Engineers Construction Co., supra.* Idaho counties are given

broad powers under I.C. § 31–604,[4] including the power to make such contracts as are necessary in the exercise of its powers, and to sue and be sued.

■ Idaho has no statute prohibiting governmental entities from submitting to arbitration. In fact, Idaho has adopted the Uniform Arbitration Act, I.C. § 7–901 *et seq.,* which specifically validates arbitration agreements. Those states which have adopted the Uniform Arbitration Act generally hold that a strong public policy favors arbitration. *Detroit Auto Inter-Insurance Exchange v. Reck,* 90 Mich.App. 286, 282 N.W.2d 292 (1979); *Jerviss v. Independent School Dist. No. 294,* 273 N.W.2d 638 (Minn.1978); *Modern Construction, Inc. v. Barce, Inc.,* 556 P.2d 528 (Alaska 1976). The legislature, in passing the Uniform Arbitration Act, did not exempt governmental entities from its operation, something which it easily could have done. Thus, it appears that in Idaho there exists no statutory prohibition against a county's submission of a claim to arbitration; rather, a strong public policy favors arbitration of disputes. Following the general rule then, in the absence of a statutory prohibition, Bingham County had the power to submit I.E.C.'s claim to arbitration.

The *Myers* case cited by Bingham County and relied on by the district court does not fit into the Idaho statutory scheme. At least one other court considering a question substantially similar to the one before us has expressly disapproved of the *Myers* case. *See Brazoria County v. Knutson, supra.* We follow the reasoning of the Texas court in rejecting the *Myers* case.

---

3. We are aware that some Idaho cases do state the rule that a county has only those powers as are expressly or impliedly conferred upon it by statute, a version of the same rule relied on in *Myers. See Johnson v. Young,* 53 Idaho 271, 286, 23 P.2d 723 (1932). However, the *Myers* court went on to conclude that the power to arbitrate was impliedly denied to counties. We see no conflict between this line of cases and the rule we announce today, in that our discussion makes it clear that the power to arbitrate is an implied power, implied from other powers expressly granted to counties under Idaho law.

4. "31–604. ENUMERATION OF POWERS.— It has power:

"1. To sue and be sued.

"2. To purchase and hold lands within its limits.

"3. To make such contracts, and purchase and hold such personal property, as may be necessary to the exercise of its powers.

"4. To make such orders for the disposition or use of its property as the interests of its inhabitants require.

"5. To levy and collect such taxes for purposes under its exclusive jurisdiction as are authorized by law."

Bingham County asserts that counties have no power to submit to arbitration because that power would circumvent mandatory claim statutes and taxpayer appeal provisions. We note that our arbitration statute was passed by the legislature subsequent to the claims statute. Thus, to avoid an implied repeal of the claims statute, we must try to read the two statutes *in pari materia*. If we cannot, then the arbitration statute, as the last expression of the legislature, must control.

 A board of commissioners is forbidden to pay a claim asserted against it until certain procedures are followed. *See* I.C. § 31–1506; I.C. § 31–1509; I.C. § 31–1513. These statutes merely require a claim to be submitted to the commission before an aggrieved party can take further action. A claim was submitted to the commission by I.E.C. and was denied. There is no reason why an aggrieved party cannot then submit his claim to arbitration rather than commencing a district court action. Arbitration is favored in that it allows parties to settle their disputes without expending time and unnecessary expense on needless litigation. *See Loomis, Inc. v. Cudahy, supra; see also Schroud v. Van C. Argiris & Co., supra.* The arbitration power of a county also does not conflict with the right of a taxpayer to appeal claims paid by a

county, because a taxpayer has that right only if a claim is allowed. I.C. § 31–1509. I.E.C.'s claim was denied.[5]

## II

Bingham County has filed a cross appeal from that portion of the district court's opinion where it indicates that, if it were not for the ground asserted by Bingham County for vacating the award, the award must be confirmed. The district court held:

"[T]he result is well within the issues submitted for arbitration, arguable concepts of facts shown, general law applicable and, certainly, within what an arbitrator might deem just and inequitable [sic] under the scope of agreement of the parties. The restrictions upon judicial review would preclude granting of a motion to vacate the monetary award and require granting the motion to confirm the award."

The main question to be considered on the cross appeal, then, is the standard of review to be utilized by a district court when faced with a proceeding under the Uniform Arbitration Act.

 Judicial review of arbitrators' decisions is much more limited than review of a trial.[6] *American Invsco Realty, Inc. v. Century 21*, 96 Ill.App.3d 56, 51 Ill.Dec. 278,

---

5. Bingham County also argues that this claim did not comply with the statutory requirements, I.C. § 31–1506; so it cannot be considered a proper claim for purposes of this argument. An examination of the claim submitted and the statute reveals that this claim substantially complied with the statute and its purposes. *See Weaver v. Village of Bancroft*, 92 Idaho 189, 439 P.2d 697 (1968); *Dunn v. Boise City*, 45 Idaho 362, 262 P. 507 (1927). We would also note that Bingham County considered this claim as though it were properly presented, but denied it because they felt they were not liable.

6. Our decision in *Hecla Min. Co. v. Bunker Hill Co.*, 101 Idaho 557, 617 P.2d 861 (1980), although decided under federal law, recognized the limited role of the judiciary in the review of arbitration decisions:

"The essential nature of arbitration is that the parties, by consensual agreement, have decided to substitute the final and binding judgment of an impartial entity conversant

with the business world for the judgment of the courts. They seek to avoid the cost, in both time and money, of formal judicial dispute resolution. But when the parties bargain for the binding decision of an arbitrator, they necessarily accept the fact that his interpretation of the facts, the law, and the equities of the situation may not be entirely satisfactory to them." *Id.* at 562, 617 P.2d 861.

We went on to note the decision of the United States Supreme Court on this subject:

"It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), cited in *Hecla Min. Co. v. Bunker Hill Co., supra.*

These statements of policy are fully applicable to a case where state courts are reviewing an arbitrator's decision.

420 N.E.2d 692 (1981). Arbitrators are the final judges of law and fact.[7] *Grudem Bros. Co. v. Great Western Piping Corp.*, 297 Minn. 313, 213 N.W.2d 920 (1973); *Hatfield v. Safeco Ins. Co.*, 31 Mich.App. 671, 188 N.W.2d 45 (1971); *Gaddis Mining Co. v. Continental Materials Corp.*, 196 F.Supp. 860 (D.C.Wyo.1961). An inquiry by a district court is limited to an examination of the award to discern if any of the grounds for relief stated in the Uniform Arbitration Act exist. Under I.C. § 7–912 those grounds are: (1) the award was procured by corruption, fraud or other undue means; (2) there was evidence of partiality by an arbitrator; (3) the arbitrators exceeded their powers; (4) the arbitrators refused to postpone the hearing to the prejudice of a party; and (5) there was no arbitration agreement and the party did not participate in the hearing without objecting.

█ Bingham County has asserted that in making the award the arbitrator exceeded his powers. I.C. § 7–912(a)(3). We find nothing in this record to indicate this. Normally, courts construe the phrase "exceeded his powers" to mean that the arbitrator considered an issue not submitted to him by the parties, or exceeded the bounds of the contract between the parties. *See Metropolitan Waste Control Comm'n v. City of Minnetonka*, 308 Minn. 385, 242 N.W.2d 830 (1976); *University of Alaska v. Modern Construction, Inc.*, 522 P.2d 1132 (Alaska 1974). *See also Hecla Mining Co. v. Bunker Hill, supra.* The contract between these parties,[8] contemplated that the arbitrator could have found that delay had occurred and that Bingham County was responsible for the delay and thus responsible for the damages. It is also clear that the parties

submitted their dispute over delay damages to the arbitrator. Because the arbitrator made an award within the submission of the dispute of the parties, under a reasonable construction of the parties' contract, he did not exceed his powers. Thus, the award of the arbitrator must be confirmed.

### III

One final issue submitted for our consideration is whether the arbitrator exceeded his powers in awarding attorney fees attributable to the arbitration proceeding to Interstate Electric Company. Since we conclude that it was not within his power to do so, we agree with the district court and affirm its decision on this issue.

█ I.C. § 7–910, a provision of the Uniform Arbitration Act, provides for the award of fees and expenses of arbitration. That statute provides that:

"Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, *not including counsel fees,* incurred in the conduct of the arbitration, shall be paid as provided in the award." (Emphasis added.)

The statute specifically excludes attorney fees from the scope of power given to the arbitrator to award fees. This statute on its face militates against the power of an arbitrator to award attorney fees to one of the parties absent a contractual agreement to do so. No such contractual agreement existed in the contract of these parties. Thus, we hold that it was beyond the power of the arbitrator to award such fees. Other courts which have considered this question

---

7. Even though a reviewing court might consider some of the arbitrator's rulings on questions of law to be error, the arbitrator's decision is nevertheless binding on a court. *Painters District Council No. 35 v. J.A.L. Painting,* 11 Mass.App. 698, 419 N.E.2d 298 (1981); *Verdex Steel & Construction Co. v. Board of Supervisors, Maricopa County,* 19 Ariz.App. 547, 509 P.2d 240 (1973). A question of law about whether an arbitrator misconstrued a contract is not open to judicial review. *Smitty's SuperValu, Inc. v. Pasqualetti,* 22 Ariz.App. 178, 525 P.2d 309 (1974).

8. Relevant clauses in the contract between the parties are: "8.3.4 This Paragraph 8.3 does not exclude the recovery of damages for delay by either party under other provisions of the Contract Documents."

"7.4.1 Should either party to the Contract suffer injury or damage to person or property because of any act or omission of the other party or of any of his employees, agents or others for whose acts he is legally liable, claim shall be made . . . ."

under identical statutes have similarly held it to be beyond the arbitrator's power. *See School Committee of Boston v. Dever,* 8 Mass.App. 920, 395 N.E.2d 900 (1979); *Floors, Inc. v. B.G. Danis of New England,* 380 Mass. 91, 401 N.E.2d 839 (1980); *Loxahatchee, etc. v. Guy Villa & Sons, Inc.,* 371 So.2d 111 (Fla.App.1978).

Affirmed in part, and reversed in part.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

The opinion of the district judge is more persuasive than the majority opinion. The latter says "*see Loomis, Inc. v. Cudahy,* 104 Idaho 106, 656 P.2d 1359 (1982)." I have seen *Loomis v. Cudahy* and do not think that Idaho litigants in general are quite ready for it. In particular, I remember that there, as here, the provision for arbitration in the place of litigation was not a product of a meeting of the minds of the parties, but flowed from an innocuous appearing paragraph buried in a printed form contract, the form being provided by the American Institute of Architects.

Counties, however, do not fit into the category of litigants in general, but are a species all their own. Claims against a county arising out of contracts should be processed in accordance with the statutory provisions. If I.C. § 31–604 should be amended, that amendment should come from the legislature, and not from the Court. Now the Court, however, seems all too willing to subvert longstanding Idaho statutory and case law any time the legislature adopts a uniform act—sometimes with drastic results. *See Loomis v. Cudahy, supra,* 104 Idaho at 112, 656 P.2d at 1365 (Bistline, J., dissenting); *Whitworth v. Krueger,* 98 Idaho 65, 558 P.2d 1026 (1978) (Bistline, J., dissenting). It would be interesting indeed to see if an Idaho legislature would knowingly enact a statutory provision which does away with exclusive district court jurisdiction of county claims in favor of arbitration.