(No. 4868.   March 25, 1927.)

In the Matter of the CITIZENS' STATE BANK OF GOODING, IDAHO.

Appeal of PAULINE BIGHAM et al. from Allowance and Classification by Commissioner of Finance as to Priority of Claims.

[255 Pac. 300.]

BANKS AND BANKING—INSOLVENCY—PAYMENT OF CLAIMS—HOLDERS OF CASHIER'S CHECKS—CERTIFIED CHECKS—BANK DRAFTS—CLASSIFICATION — "DEPOSITOR" — CONTRACTUAL LIABILITY — TRUST FUNDS — AUGMENTATION OF ASSETS.

1. Under Laws 1921, chap. 42, sec. 19, defining term "depositor," holders of cashier's checks issued by bank before its failure are not entitled to classification as depositors as provided by section 13.

· 2. Under Laws 1921, chap. 42, sec. 19, holder of certified check, issued by bank before its failure, is not entitled to classification as a depositor in accordance with sec. 13.

3. Where drafts on other banks were secured by depositors by drawing checks on deposit before bank's failure, holders thereof were not entitled to classification as depositors, as provided in Laws 1921, chap. 42, sec. 13, since failure to pay draft would not have effect of transferring amount thereof back to the holders' account as depositors.

4. Holder of cashier's check, issued by bank before its failure as proceeds of collection paid by check against account in such bank, held entitled to classification under Laws 1921, chap. 42, sec. 13, as class 4, covering all other contractual liabilities other than expenses of liquidation, trust funds and claims of depositors, since assets of bank were not augmented by transaction.

5. Where cashier's draft, issued by bank before its failure as proceeds of collection, which was paid to it in cash, actually augmented assets of bank which passed into hands of commissioner, holder was entitled to classification under Laws 1921, chap. 42, sec. 13, subd. 2, as a debt due by the bank as trustee.

---

Publisher's Note.

4. Right of holder of a cashier's check to a preference, see note in 21 A. L. R. 680.

See Banks and Banking, 7 C. J., sec. 547, p. 751, n. 75, 77 New; sec. 548, p. 751, n. 78, p. 752, n. 81.

44 Idaho—3

APPEAL from the District Court of the Fourth Judicial District, for Gooding County. Hon. H. F. Ensign, Judge.

Appeal from judgment approving and sustaining allowance and classification by Commissioner of Finance as to priority of claims. *Judgment modified in part and affirmed in part.*

James & Ryan, for Appellants.

A bank cashier's check and a deposit stand on the same footing. The depositors deposit their money relying upon the credit of the bank. The purchaser of a cashier's check purchases the same relying upon the credit of the bank. It is a case where equality among creditors is equity. (*Harrison v. Wright,* 100 Ind. 515, 50 Am. Rep. 805.)

Where a depositor of a bank draws a check upon his account in such bank and receives therefor a cashier's check and the bank thereafter becomes insolvent and the cashier's check is not paid, the drawer of the check is restored to his original position as a depositor. (*Stanley v. Green,* 205 Ala. 225, 21 A. L. R. 680, note, 87 So. 356; *Clark v. Chicago Title & Trust Co.,* 186 Ill. 440, 78 Am. St. 294, 57 N. E. 1061, 53 L. R. A. 232; *Dingley v. McDonald,* 124 Cal. 90, 56 Pac. 790.)

Where a claim against a third party is forwarded to a bank for collection and the bank collects the same in cash and attempts to remit it to the creditor by cashier's check but closes its doors before such cashier's check in due course of business is presented for payment, having at all times cash on hand in excess of the amount collected, the creditor is entitled to receive the amount of his claim from the assets of the defunct bank as a trust fund in preference to general creditors. (*Goodyear Tire & Rubber Co. v. Hanover State Bank,* 109 Kan. 772, 21 A. L. R. 677, 204 Pac. 992; *Kesl v. Hanover Bank,* 109 Kan. 776, 204 Pac. 994.)

Bissell & Bird, for Respondent.

Appellants were not general depositors in so far as the funds represented by the cashier's checks and drafts in question are concerned. (Sec. 19, c. 42, Sess. Laws 1921; *Drinkall v. Movius State Bank*, 11 N. D. 10, 95 Am. St. 693, 88 N. W. 724, 57 L. R. A. 341; *People's Bank v. Bone* (Kan.), 250 Pac. 276; *Bacon v. State Bank of Kamiah*, 41 Ida. 518, 240 Pac. 194; *Bates v. Capital State Bank*, 18 Ida. 429, 110 Pac. 277; *Duncan v. Anderson* (Okl.), 250 Pac. 1018.)

Appellants U. S. Fuel Co. and Northwestern National Bank are holders of cashier's checks and there is, therefore, no trust relationship between them and the failed bank. (*Chetopa State Bank v. Farmers' etc. Bank*, 114 Kan. 463, 218 Pac. 1000; *Guymon etc. Co. v. Farmers' State Bank*, 120 Kan. 233, 243 Pac. 321; *Morandi v. Italian American Bank* (Colo.), 251 Pac. 541; note, 21 A. L. R. 680, and cases cited.)

These two appellants cannot be classified as depositors because they are the holders of cashier's checks. (Secs. 13 and 19, chap. 42, Sess. Laws 1921.)

JOHNSON, Commissioner.—The Citizens' State Bank of Gooding failed and was taken in charge by E. W. Porter, Commissioner of Finance, under Sess. L. 1921, c. 42, p. 53.

Some twenty-one parties filed their claims with said commissioner, asking for various classifications. The commissioner allowed their claims, but the claimants being dissatisfied with their classifications perfected an appeal to the district court. The appeal was consolidated for hearing and "it was stipulated and agreed in open court that the record of appeal of the various appellants and the answers of the commissioner of finance filed thereto contained a true statement of the facts in the matter of said appeal." The district court entered a judgment approving and sustaining the commissioner's classification. From this judgment an appeal is taken to this court.

The various claimants have been grouped in appellants' brief. Appellants' statement of facts, not questioned by respondent, clearly and concisely states the facts as follows:

For a number of years prior to April 20, 1925, the Citizens' State Bank was doing a general banking business at Gooding, Idaho. On April 20, 1925, said bank closed its doors and ever since its affairs have been in the hands of E. W. Porter, Commissioner of Finance of the State of Idaho.

Each of the appellants filed separate claims with the Commissioner of Finance against the bank wherein they requested certain priorities. The Commissioner of Finance allowed the full amount of each claim but rejected the priorities requested.

Appellant, Pauline Bigham, carried a checking account in the bank and on Saturday, April 18, 1925, she obtained the bank cashier's check in the sum of $50.88 and gave the bank a check on her account. The bank did not open for business the following Monday morning, April 20, 1925.

The claims of the following appellants, to wit, Modern Woodmen of America, Modern Woodmen of the World, F. O. Requist, and H. H. Evilsizer, are practically identical with the claim of Pauline Bigham. That is, they all carried checking accounts and shortly before the bank closed, obtained cashier's checks and gave checks on their accounts. Appellant, H. A. Bushby, on Saturday, April 18th, obtained the bank cashier's check in the sum of $200 and gave the bank $200 in cash. The bank did not open for business on the following Monday, April 20th. The claims of appellants, Schmidt, Estabrook, Fales, Soloman, Christensen, Church, Ydoyga, Osborn and Rector are practically identical with the claim of H. A. Bushby. That is, shortly before the bank closed they obtained cashier's checks and paid for the same in cash. Appellants, A. C. Thompson, administrator, and C. L. Miller, carried checking accounts in the bank and shortly before the bank closed, obtained drafts on other banks and gave checks on their accounts. Appellant, A. F. James, agent for W. E. Barkley, carried a checking account

in the bank and obtained a certified check for the full amount of his deposit, to wit, $196.38.

None of the cashier's checks, drafts or the certified check were paid for the reason that the bank closed before any of them were presented for payment. All the above appellants requested priority in payment as claims for the class specified in Sess. L. 1921, c. 42, sec. 13, subd. 3, p. 61. The Commissioner of Finance rejected the priority requested and gave all of the said claims the priority of class 4 as defined in said sec. 13.

Appellant, United States Fuel Company, was a creditor of the City Transfer Company of Gooding, and drew a sight draft on said company and forwarded the same to the Citizens' State Bank for collection. On April 16, 1925, the bank collected said claim in cash from said City Transfer Company and on the same day forwarded its cashier's check in the sum of $179.95 to the United States Fuel Company, at Salt Lake City. It is admitted that at all times since the bank made such collection it had on hand in cash a sum in excess of the amount collected. The claim of the Northwestern National Bank of Portland, Oregon, is based upon facts similar to the claim of the United States Fuel Company. That is, the Furcht Auto Company was indebted to the Northwestern National Bank and it drew a draft on the auto company and forwarded it to the Citizens' State Bank, which collected from the auto company by the issuance of checks by said company against its account in the Citizens' State Bank. On April 16, 1925, the bank forwarded its cashier's check to the Northwestern National Bank in the sum of $43.55, and on April 18th forwarded to the said bank its cashier's check in the sum of $119.97. The cashier's checks payable to the United States Fuel Company and to the Northwestern National Bank were not paid for the reason that the Citizens' State Bank closed before the same were presented for payment. Both filed their claims with the Commissioner of Finance and requested priority in payment as claims of the class specified in subdivision 2 of the aforesaid act. The Commissioner of Finance ·rejected

the priority requested and gave both of said claims the priority of class 4 as defined in said sec. 13.

It will be seen that fifteen of the appellants obtained cashier's checks and yet contend that they should be classified as depositors. Sess. L. 1921, c. 42, sec. 19, p. 66, reads:

"The term 'depositor' as used throughout this act means any person who shall deposit money or commercial paper in any bank, either on open account subject to check, or to be withdrawn otherwise than by check, whether interest is to be allowed thereon or not, and shall include holders of demand and time certificates of deposit, lawfully issued. It does not include the holders of cashier's checks nor of certified checks, nor does it include any other bank or trust company."

[1] This court is bound by the statute and under it the holder of cashier's checks is not a depositor, and the appellants holding such cashier's checks are not entitled to such classification.

Sess. L. 1921, c. 42, sec. 13, p. 61, as far as applicable to this case, is as follows:

"The order of payment of the debts of a bank or trust company liquidated by the commissioner hereunder shall be as follows:

"(1) The expenses of liquidation, including compensation of agents, employees and attorneys:

"(2) Debts due by the bank or trust company as trustee or other fiduciary, or other claims of like character;

"(3) Debts due depositors, including protest fees paid by them on valid checks presented after closing of the bank or trust company, pro rata; all deposits of public funds of every kind or character (except those actually placed on special deposit under statutes providing therefor), including those of the United States, the State of Idaho, and every county, district, municipality, political subdivision or public corporation of this state, whether secured or unsecured, or whether deposited in violation of law or otherwise, are included within the terms of this subdivision and take the same priority as debts due any other depositor; anything

in the statutes of the State of Idaho to the contrary notwithstanding.

"(4) All other contractual liabilities, *pro rata.*"

[2]   Appellant, A. F. James, agent for W. E. Barkley, obtained a certified check and he is under the statute in the same category as the holders of cashier's checks and is not entitled to a classification as a depositor.

Appellants, Thompson and Miller, carried checking accounts in the bank and gave checks on their accounts and obtained drafts on other banks. They contend they are entitled to be classified as depositors.

[3]   By drawing checks on their deposit in payment of the drafts, appellants reduced their deposit *pro tanto* and changed the character of the indebtedness from the bank to them. The bank, after the draft was procured, was no longer liable to them as depositors, but contracted to pay the draft. It is true that the relation of debtor and creditor still existed when the bank failed to pay the draft, but the failure to pay it did not have the effect of transferring back to their account as depositors the amount of the draft. The bank, when it issued the draft, entered into a contract to pay the holder the amount stated in the draft. The said claimants, Thompson and Miller, are not entitled to a classification as depositors on account of these drafts.

The only two remaining claimants are the United States Fuel Company of Utah and the Northwestern National Bank of Portland, Oregon. In the case of the United States Fuel Company, the bank collected the sight draft from the transfer company *in cash* and the assets of the bank were *augmented* to the amount of the claim, while in the case of the Northwestern National Bank, the Furcht Auto Company issued *checks* against its account in the Citizens' State Bank. In both cases neither of the claimants had any connection with the bank except that it was used as a collection agency and no instructions were given by either as to how the money after collection should be transmitted by the bank to them, and neither of said claimants procured from, or had anything to do with the issuance by the bank of the cashier's checks forwarded to them. Appellants' contention is that

both of these claimants should have been and are entitled to a classification "under subdivision 2, and if not in subdivision 2 at least in subdivision 3." Subdivision 2 covers "debts due by the bank as trustee or other fiduciary, or claims of like character," and, broadly speaking, subdivision 3 relates to *depositors*.

"The general principle of equity is that the assets of an insolvent are to be distributed ratably among his creditors. A considerable number of priorities have, however, been created which interfere with the operation of the general rule. But, where the statutes provide that certain claims shall be first paid out of the assets of an insolvent, the courts cannot allow other priorities." (14 R. C. L. 658.)

Again, the same authority, at page 663, states the rule as to fiduciary debts as follows:

"Trust property in the hands of an insolvent fiduciary does not pass to his assignee in insolvency, and therefore, if one who is entitled to a trust fund can trace it to the possession of a trustee or assignee in insolvency, he can recover it *in toto* as against the general creditors of the insolvent. The right of a fiduciary is secured more as an owner of the fund than as a creditor of the insolvent. Thus, on the insolvency of an agent having possession of the property of his principal, the latter if he can trace his property may recover it as against the creditors of the agent. But where a trustee has mingled the trust funds with his individual money, the *cestui que trust* is not generally allowed to follow and hold it as against the creditors of the trustee, unless he can trace it and show that the estate has been increased by the misappropriation."

The question then is, was this money covered by these two claims rightfully *in the general fund of the bank?* Or was it a trust fund that has been wrongfully intermingled with the funds belonging to the bank thereby increasing said funds to the amount of said trust fund?

It was held in *Beard v. Independent Dist. of Pella City* (C. C. A.), 88 Fed. 375, that:

"In order that a trust fund may constitute a preferential claim against the funds of a national bank in the hands of a

receiver, it must appear that these funds were actually augmented by the receipt of the trust fund. And if the trust fund was created merely by check on the same bank drawn by a general depositor in favor of the trustee, the amount of which was then shifted to the latter's credit, there is no right to a preference.''

In *Guymon-Petro Merc. Co. v. Farmers' State Bank*, 120 Kan. 233, 243 Pac. 321, the syllabus is as follows:

''Plaintiff received three checks on the Farmers' State Bank of Cunningham in payment of accounts due it from Cunningham retail merchants. The checks were deposited for collection in a Hutchinson Bank, which sent them to a Kansas City trust company, which forwarded them direct to the Cunningham bank for returns. The latter bank charged the checks against the checking accounts of the makers and sent drafts to the trust company in payment, but before the drafts were presented to the drawee the Cunningham bank failed and was taken in charge by the bank commissioner and the drafts dishonored, and the trust company and the Hutchinson bank charged back the amount of the checks to plaintiff. *Held,* that the trial court correctly decided that plaintiff was entitled to a common claim against the assets of the insolvent bank and not entitled to a preferred claim, and the transaction did not give rise to a trust fund in the hands of the receiver in favor of plaintiff.''

Appellants cite the case of *Goodyear Tire & Rubber Co. v. Hanover State Bank*, 109 Kan. 772, 21 A. L. R. 677, 204 Pac. 992, as supporting their contention. This opinion was by a divided court, and in *Chetopa State Bank v. Farmers & Merchants' State Bank*, 114 Kan. 463, 218 Pac. 1000, the same court explains the former decision and although not directly reversing the same, does quote many decisions to the contrary.

[4] We are of the opinion that the assets of the bank were not augmented by the transaction in connection with the claim of the Northwestern National Bank and the classification given by the commissioner and lower court should be affirmed. (See *Cox v. St. Anthony Bank & Trust Co.,* 41

Ida. 776, 242 Pac. 785; *United States Nat. Bank v. Standrod & Co.,* 42 Ida. 711, 247 Pac. 794.)

The United States Fuel Company's claim resulting from collection by the Citizens' State Bank of cash from the transfer company certainly had the effect of and actually did augment the assets of the bank which passed into the hands of the commissioner. On the same day the collection was made it forwarded its cashier's check to the United States Fuel Company for the amount so collected.

In *Fralick v. Coeur d'Alene B. & T. Co.,* 36 Ida. 108, 210 Pac. 586, this court laid down the rule as follows:

"If a bank accepts a deposit from A, under an agreement to pay it to B, the contract is one for the benefit of B. It has been held that such a contract creates a trust relationship in favor of B, and that in case of insolvency of the bank the trust relationship will be recognized and B is entitled to recover the trust fund if it can be traced into the assets of the bank. (*Woodhouse v. Crandall,* 197 Ill. 104, 64 N. E. 292, 58 L. R. A. 385.) We think this rule is correct if B did not consent that the deposit should be considered as one for his credit."

See, also, *United States Nat. Bank v. Standrod & Co., supra.*

[5] We believe that the United States Fuel Company is entitled to have a classification under subdivision 2 and we recommend that the judgment of the court as to the United States Fuel Company be modified as to this claim, and that the judgment of the court as to the other claims be affirmed. We also recommend that no costs be allowed.

Varian and Brinck, CC., concur.

PER CURIAM.—The foregoing is approved as the opinion of the court, and the judgment of the lower court is modified as to the claim of the United States Fuel Company so as to entitle it to a classification under subdivision 2 as aforesaid, but as to all other claims the judgment is affirmed. No costs awarded.