(No. 5652.   April 25, 1931.)

W. C. WHITE, in His Capacity as Assessor of Lemhi County, Idaho, Respondent, v. PIONEER BANK & TRUST COMPANY, a Corporation, E. W. PORTER, as Commissioner of Finance, and A. M. BOYLEN, as Liquidating Agent, Appellants.

[298 Pac. 933.]

E. W. Whitcomb, for Appellants.

L. E. Glennon, for Respondent.

BUDGE, J.—The Pioneer Bank & Trust Company of Salmon, Lemhi county, was closed for insolvency May 20, 1929, and its affairs and assets taken in charge by the state department of finance represented by a liquidating agent. At that time there was on deposit in said bank to the credit of an account designated as ''Assessor of Lemhi County, by W. C. White,'' the sum of $2,814.48, which sum or an amount in excess thereof was represented by actual cash on hand and went into the hands of the commissioner of finance by virtue of his office and of his taking charge of the affairs and assets of the bank for the purpose of liquidation. This money was ''public funds,'' representing automobile license fees collected by the assessor in his official capacity as assessor of Lemhi county and in the performance of his duty as agent of the department of law enforcement of the state of Idaho. It appears to have been the custom of the assessor to make deposits in the bank, under the account designated as above stated, of motor vehicle license fees collected by him, and on the 20th of each month to draw a check in favor of the county treasurer in remittance of the

fees. Checks drawn by the assessor on this account were honored and paid by the bank and the amounts thereof charged to the account of the assessor.

In due time following the closing of the bank the assessor presented to the commissioner of finance a claim requesting that the amount so on deposit as aforesaid be classified as a trust fund payable according to the priority accorded by the provisions of the Bank Act, Sess. Laws 1925, chap. 133, sec. 77, subd 2. The claim was disallowed as to the classification requested, and was instead classified for payment under the provisions of subd. 3 of sec. 77, *supra*.

This action was commenced by W. C. White, in his capacity as assessor of Lemhi county, against the Pioneer Bank & Trust Company, E. W. Porter as commissioner of finance, and A. M. Boylen as liquidating agent of the bank, to vacate the order of the commissioner of finance as to classification of the claim for payment, and to have the deposit declared a trust fund and the amount thereof impressed with a trust until such time as the same be fully discharged by payment. After disposition by the court of various preliminary motions, etc., the defendants filed a joint answer to the complaint and the cause came on for hearing before the court. The evidence introduced consisted of the testimony of the plaintiff assessor, duplicate copies of deposit slips, creditor's claim against the bank, and an agreed statement of facts entered into by the parties to the action stipulating most of the facts hereinabove recited. The trial court found in favor of the plaintiff, the judgment vacating the order of the commissioner of finance classifying the funds as a common deposit under subd. 3 of section 77 of the Bank Act and declaring the same to be trust funds, impressed with a trust and payable as such from the assets of the bank. A payment of twenty-five per cent of the amount claimed has been received during the course of the liquidation of the bank's assets, under the classification made by the department of finance. The defendants have appealed from the judgment.

■ We are unable to follow appellants' contention that these moneys collected by the assessor did not become public moneys until turned over to the county treasurer. As we view it, they became public moneys the instant they were collected by the assessor, a public officer of the state charged with the duty of accepting them in payment of automobile licenses as agent of the state department of law enforcement. Certainly these funds are within the general definition of public moneys, stated in C. S., sec. 8381, to include "all moneys belonging to the state, or any city, county, town or district therein, and all moneys . . . . received or held by the state, county, district, city or town officers in their official capacity." (See, also, 50 C. J., p. 854, sec. 40.) The definition of public moneys in Sess. Laws 1925, chap. 45, sec. 2, has reference to public moneys coming into the hands of the treasurer of a depositing unit or, in the case of a county, money coming into the hands of its tax collector or public administrator, and relates only to the officers named in respect of their duty in safeguarding and protecting the funds of political subdivisions received by them.

■ The appellant bank had accepted these funds and placed them on deposit to the credit of an account designated "Assessor of Lemhi County, by W. C. White." Its officers and agents knew they were not deposited in compliance with any public depository law, and from the handling of numerous transactions under the account they were acquiescent with the fact that these deposits by the assessor represented collections made by him in payment for motor vehicle licenses. Accordingly the bank stands charged with knowledge of its officers and agents that the funds were public funds or moneys as construed above and as admitted by the agreed statement of facts used as evidence upon the trial.

■ We come then to the chief point in the case, whether the moneys so on deposit at the time of the closing of the bank for insolvency should be classified for payment as a trust fund or the same as debts due any other deposi-

tor; that is, under subd. 2 or 3 of sec. 77, chap. 133, Sess. Laws 1925.

It has heretofore been held by this court that, although public moneys were deposited other than upon special deposit, they remained nevertheless a trust fund, and in case of the insolvency of the bank it was the duty of the receiver to treat such funds as a trust fund and the property of the true owners; that the funds represented by said deposit were preferred and payable out of the assets of the bank prior to the payment of depositors, stockholders or other creditors of the insolvent bank, and that such creditors were not to share *pro rata* in the public moneys so deposited. (*Fidelity State Bank v. North Fork H. Dist.*, 35 Ida. 797, 31 A. L. R. 781, 209 Pac. 448, and cases cited therein; *Independent School Dist. v. Porter*, 39 Ida. 340, 228 Pac. 253.)

The legislature has made specific direction for the exclusion from subd. 2 of sec. 77, *supra*, as "funds held by bank in trust" and included within subd. 3, with the same priority as debts due any other depositor, "all deposits of public funds of every kind and character (except those actually placed on special deposit under the statutes providing therefor) including those of the United States, the State of Idaho, and every county, district, municipality, political subdivision or public corporation of this state, whether secured or unsecured, or whether deposited in violation of law or otherwise . . . . ; anything in the statutes of the State of Idaho to the contrary notwithstanding."

If this statutory provision for the classification and order of payment of public funds on deposit in a bank which is closed and its affairs taken in charge by the department of finance is constitutional, the deposit here involved cannot be deemed a trust fund, and the commissioner of finance would be blameless for adhering to the plain terms of the statute in classifying the claim for payment under subd. 3 of sec. 77 of the Bank Act.

Title to the greater proportion of these funds was vested in the county of which respondent was the assessor. (C. S.,

sec. 1582, as amended; Sess. Laws 1929, chap. 195, at p. 370.) To have such funds placed on general deposit and payable *pro rata* out of whatever assets of the bank remained after its affairs were wound up subsequent to its being closed for insolvency, and use of such funds in payment of the debts of the insolvent bank, would be pledging the faith and credit of the county to which the funds belonged, in aid of appellant banking corporation, in derogation of the provisions of art. VIII, sec. 4, and art. XII, sec. 4, of the state Constitution. As said in *School Dist. No. 8 v. Twin Falls etc. I. Co.*, 30 Ida. 400, 404, 164 Pac. 1174:

"The sections of the constitution referred to are self-operative. They are intended to prevent any county, city, town or other municipal corporation from lending credit to or becoming interested in any private enterprise."

Article VIII, sec. 2, of the Constitution is of like application to the state as to that proportion of the funds herein accruing to it under C. S., sec. 1582, *supra*. (*Atkinson v. Board of Commrs.*, 18 Ida. 282, 108 Pac. 1046, 28 L. R. A., N. S., 412.)

In *Fluharty v. Board of County Commrs.*, 29 Ida. 203, 158 Pac. 320, the court had under consideration whether a statute authorizing boards of county commissioners to appropriate a sum out of the county treasury to assist in defraying the expenses of fairs or companies or associations having for their object the exhibition of livestock and agricultural products of their · county was in contravention of art. XII, sec. 4, of the Constitution. The rationale in answer to the question is not inappropriate here:

"Were such donation or appropriation made, it would place county funds . . . . under the control of the corporation and its officers, which funds would be appropriated to, and expended for, other purposes than the legitimate current expenses for the lawful administration of the government of the county, and by individuals not officers of the county or amenable to the laws authorizing the expenditure of public moneys."

Speaking of a similar constitutional provision, it was said in *Speer v. School Directors of Blairsville*, 50 Pa. St. 150:

"It intended to confine the municipal expenditures not only to public objects, but to public officers or agents under their direct responsibility to the municipality."

As against the disability of such constitutional prohibitions there is no difference between voluntary and compulsory obligations,—"the legislature could no more impose it than the county could voluntarily assume it." (*Board of Lake County Commrs. v. Rollins*, 130 U. S. 662, 9 Sup. Ct. 651, 32 L. ed. 1060; *Eaton v. Mimnaugh*, 43 Or. 465, 73 Pac. 754.)

The Constitution says that the credit of the state or any county shall not be given, loaned or pledged directly or indirectly, in any manner, in aid of any individual association or corporation, or that a county shall not become responsible for any debt in aid of any individual, association or corporation. The Constitution must be obeyed in preference to a statute which says they shall do so.

We think the assessor by virtue of his office and the duty imposed upon him of collecting the moneys in question and of transferring the same through the channel by which they would reach their owners, the county and state, was a proper party plaintiff, as trustee of the funds, to regain control of which and to be enabled to turn them over in fulfillment of his trust he brought this action.

In view of the conclusions reached it is not thought necessary to consider whether the statute is violative of other constitutional provisions. Nor do we find that other questions raised by appellants but not urged are of such gravity as to justify a reversal of the judgment.

The finding of the trial court that subd. 3 of sec. 77, chap. 133, Sess. Laws 1925, is unconstitutional and void in so far as it applies to the deposit of the funds here involved, and the judgment, directing that the claim covering said funds be classified as a trust fund, payable as such, are affirmed. Costs are awarded to respondent.

Lee, C. J., and Givens, Varian and McNaughton, JJ., concur.