(No. 6008.   June 28, 1933.)

FEDERAL RESERVE BANK OF SAN FRANCISCO, a Corporation, Appellant, v. CITIZENS BANK & TRUST COMPANY, OF POCATELLO, IDAHO, a Corporation, BEN DIEFENDORF, Commissioner of Finance of the State of Idaho, H. A. COLLINS, Liquidating Agent of the Citizens Bank & Trust Company, of Pocatello, Idaho, a Corporation, Respondents.

[23 Pac. (2d) 735.]

A. C. Agnew and Merrill & Merrill, for Appellant.

B. W. Davis, for Respondents.

Dean Driscoll, *Amicus Curiae.*

GIVENS, J.—September 22, 1931, the Citizens Bank & Trust Company of Pocatello, Idaho, received from appellant certain checks for collection and remittance, drawn by depositors of the Citizens Bank & Trust Company on their respective deposits in said bank. On that day, the Citizens Bank & Trust Company stamped said checks "paid," charged the amounts to the several accounts of their depositors, and in payment thereof sent a draft in the amount of $26,335.70 to the Salt Lake City branch of appellant at Salt Lake City, Utah, which draft reached Salt Lake the morning of September 23d, on which day the Citizens Bank & Trust Company did not open for business.

Thereafter, respondent Diefendorf, as Commissioner of Finance of the state of Idaho, as authorized by law, took over the affairs of the Citizens Bank & Trust Company, returning the respective checks to the depositors of the Citizens Bank & Trust Company, and refused the demand of appellant that the amount of the draft, less $129.05, the difference being for reasons immaterial herein, be a preferred claim or trust under sec. 13, chap. 60, Sess. Laws 1931, p. 102, now sec. 25–1313, I. C. A., and subd. 2, sec. 77, chap. 133, Sess. Laws 1925, instead, classifying it under subdivision 3, sec. 77, chap. 133, Sess. Laws 1925, now sec. 25–915, I. C. A.

The trial court sustained a demurrer to the complaint and this appeal is here from a judgment of dismissal upon the contention that chap. 60, Sess. Laws 1931, now secs. 25–1313 to 25–1317, inclusive, are unconstitutional, because the title to the original enactment did not comply with and violated sec. 16 of art. 3, and that the substance of the act is in violation of sec. 19 of art. 3, secs. 8 and 12 of art. 11 of the state Constitution, and the fifth amendment of the Constitution of the United States.

Taking up the question of the title, appellant urges that since the statute has been taken into the codification of 1932, the defect in the title is immaterial, relying upon *Curoe v. Spokane etc. R. Co.*, 32 Ida. 643, 186 Pac. 1101, 37 A. L. R. 923; *Brady v. Cooper*, 46 S. D. 419, 193 N. W. 246; *Skaggs v. Grisham-Hunter Corp.*, (Tex. Civ. App.) 53 S. W. (2d) 687.

Whether the Idaho Code Annotated became effective upon the Governor's proclamation, December 1, 1932, made pursuant to sec. 5, chap. 213, Sess. Laws 1931, p. 415, at 417, now paragraph 5, p. 2, I. C. A., or pursuant to chap. 1, Sess. Laws 1933, p. 3, the transactions upon which the action herein is based transpired prior to the time the Idaho Code Annotated came into force and effect, though the judgment in the trial court was signed thereafter.

Therefore the sufficiency of the title as to the cause of action here must be determined from the standpoint of its sufficiency prior to the incorporation of this statute in the code. (*Bales v. State*, 63 Ala. 30; *American Indemnity Co. v. City of Austin*, 112 Tex. 239, 246 S. W. 1019; *Anderson v. Great Northern Ry. Co.*, 25 Ida. 433, 138 Pac. 127, Ann. Cas. 1916C, 191; *Emmett Irr. Dist. v. McNish*, 38 Ida. 241, 220 Pac. 409; *Cook v. Massey*, 38 Ida. 264, 268, 269, 220 Pac. 1088, 35 A. L. R. 200; *Ward v. Burley St. Bank*, 38 Ida. 764, 768, 225 Pac. 497; 59 C. J., sec. 489, p. 893.)

From the briefs, it appears that chap. 60, Sess. Laws 1931, was promulgated by the American Bankers' Association under the title of the "Bank Collection Code," and that it has been adopted by some eighteen states, including Idaho. The title of the proposed act as submitted by the American Bankers' Association was: "An Act to expedite and simplify the collection and payment by banks of checks and other instruments for the payment of money," under which title the act was adopted with but slight change in the body of the act, in Idaho, Indiana, Michigan, New Jersey, New Mexico, Pennsylvania, South Carolina, Washington and Wyoming. We do not have the West Virginia Session Laws, though it was adopted in that state.

In Illinois the title was thus arranged:

"Negotiable Instruments.

"Banks—Deposit and Collection of Checks.

"§ 1. Definitions.

"§ 2. Bank is agent for collection.

"§ 3. Item on same bank.

"§ 4. Legal effect of indorsement.

"§ 5. Duty and responsibility of bank collecting agents.

"§ 6. Rule of ordinary care in forwarding and presentment.

"§ 7. Items received through the mail.

"§ 8. Items lost in transit.

"§ 9. Medium of payment.

"§ 10. Medium of remittance.

"§ 11. Election to treat as dishonored item presented by mail.

"§ 12. Notice of dishonor of items presented by mail.

"§ 13. Insolvency and preferences.

"§ 14. Cases not provided for in act.

"§ 15. Inconsistent laws repealed.

"An Act defining the relations between banks and their depositors with respect to the deposit and collection of checks and other instruments payable in money." (Page 671, Laws of Illinois, 1931.)

Of course in Idaho, the title to an act need not be an index thereof. (*Barton v. Alexander*, 27 Ida. 286, 148 Pac. 471, Ann. Cas. 1917D, 729.)

The Kentucky title was as follows:

"An Act to amend chapter 90b, section 3720b, Carroll's Kentucky Statutes, 1922 edition, entitled Negotiable Instruments in General and being chapter 102, page 213, of the Acts of the General Assembly of 1904, by adding thereto an additional section providing for: duties and liability of bank as agent of collection; rights of banks in regard to credit items; the legal effect of endorsements; the duty and responsibility of bank collecting agents; rules of ordinary care in forwarding and presentment; items received through the mail; items lost in transit; medium of payment; medium

of remittance; election to treat as dishonored items presented by mail; notice of dishonor of items presented by mail and insolvency and preferences, in order to make and keep the Negotiable Instruments Law uniform.'' (Page 49, Kentucky Acts 1930.)

The Maryland title was thus:

''An Act to add seventeen new sections to Article 11 of the Annotated Code of Maryland (1924 Edition), title 'Banks and Trust Companies,' to be under the sub-title 'Bank Collection Code,' said new sections to be known as Sections 83–99, inclusive, to follow immediately after Section 82 of said Article, and to deal with the collection and payment by banks of checks and other instruments for the payment of money.'' (Page 1143, Laws of Maryland 1929.)

In Missouri the title was as follows:

''Finance, Department of: Relating to Payment and Collection by Banks of Checks and other Instruments for Payment of Money.

''An Act to expedite and simplify the collection and payment by banks of checks and other instruments for the payment of money.

''Section
''  1.  Establishing bank collection code.
''  2.  Terms defined.
''  3.  Agent and sub-agent of depositor.
''  4.  Credits subject to revocation.
''  5.  Restrictive indorsement defined.
''  6.  When agent bank is not responsible.
''  7.  Item deposited for collection.
''  8.  Bank not responsible for loss or destruction, when.
''  9.  Collecting bank liable, when.
''10.  Item or items for collection to be returned, when.
''11.  Duty of receiver or other official.
''12.  Provisions of act not retroactive.
''13.  Act to make uniform law of the state.
''14.  Repealing acts in conflict.'' (Page 205, Laws of Missouri, 1929.)

The title used in Nebraska was the same as that used in the suggested act and as used here, except the additional designation of the repeal of chap. 29, Laws of Nebraska, 1925, which chapter corresponds to the subject matter of sec. 25–1008, I. C. A.

Oregon did likewise, Sess. Laws 1931, p. 189, repealing their sec. 22–1414, Oregon Code 1930.

In New York the title was:

"An Act to amend the negotiable instruments law, in relation to the collection and payment of instruments for the payment of money." (Page 1266, Vol. 2, 1929, Laws of New York.)

The title in Wisconsin, p. 462, Laws of Wisconsin 1929, was the same as here except it specified that it created sec. 220.15, which, by reference to sec. 220.14, shows that the legislature intended to add it to their general statute on banking (*State v. Stewart,* 46 Ida. 646, 650, 270 Pac. 140), and it was so classified here by the codifier of I. C. A.

While the brief of *amicus curiae* adverts to the fact that the court might have found in the absence of the questioned statute that appellant was entitled to a preference, the complaint was not drawn on that theory, and whether chap. 60, Sess. Laws 1931, be considered as amending chap. 133, Sess. Laws 1925, our extant general banking code, or as merely adding to chap. 60 the changes covered by sec. 13, it does contain the legislative declaration relative thereto, and while perhaps the precise point has not been passed upon by this court, the general questions of preference and trust funds have not been without recessions. (*In re Citizens State Bank,* 44 Ida. 33, 255 Pac. 300; *National Bank of the Republic v. Porter,* 44 Ida. 514, 258 Pac. 544; *Skinner v. Porter,* 45 Ida. 530, 263 Pac. 993, 73 A. L. R. 59; *Peterson v. Porter,* 46 Ida. 43, 266 Pac. 429; *Lind v. Porter,* 46 Ida. 50, 266 Pac. 419; *Independent School Dist. No. 1 v. Porter,* 46 Ida. 150, 266 Pac. 1098; *Pacific States Sav. & Loan Co. v. Commercial State Bank,* 46 Ida. 481, 269 Pac. 86, 59 A. L. R. 433; *Adams County v. Meadows Valley Bank,* 47 Ida. 646, 277 Pac. 575; *Callahan v. First State Bank,* 48 Ida. 57, 279 Pac.

414; *White v. Pioneer Bank & Trust Co.*, 50 Ida. 589, 298 Pac. 933.)

It need not be said that the legislative or executive policy or judicial declarations have heretofore indicated or committed the state to a definite attitude towards preferences in cases of failed banks, to realize that the act adds very materially to those preferences which have heretofore been granted in state bank insolvency proceedings.

The first phrase of sec. 16, art. 3, covers at least two requirements: first, that every act shall embrace but one subject, and matters properly connected therewith, and second, that such subject shall be expressed in the title.

Conceding, without deciding, that the body of the act covers but one subject, and matters properly connected therewith, the question is whether the title sufficiently reflects, under the provisions of the Constitution and previous decisions of this court, the entire subject matter of the act, specifically with reference to sec. 13, which, as indicated by the headnote in the proposed act and in its codification, and as indicated in some of the statutes as passed in some of the other states, pertains to "insolvency and preferences."

Both the majority and dissenting opinions in *Jackson v. Gallet*, 39 Ida. 382, 228 Pac. 1068, emphasize that the title must be such as to reasonably apprise of what is contained in the body of the act, and that "a title so general as to practically conceal the subject of the statute, or a false or delusive title, will be treated as not constitutionally framed," and "The purpose of this provision is to prevent deception of the members of the legislature and *the people*, which would result from incorporating provisions in the body of an act of which the title gives no indication. . . . . A title which conceals the real subject of the statute or one which is delusive or false, violates the constitution." (Italics ours.)

Appellant relies upon *Witt v. People's State Bank of South Carolina*, 166 S. C. 1, 164 S. E. 306, 83 A. L. R. 1068, as the main authority in support of their contention that the title is sufficient, having been so declared in that case.

That case, however, while it attempts to distinguish the previous holding of the same court with regard to the title of another act, in *Nettles v. People's Bank*, 160 S. C. 104, 158 S. E. 214, cannot be, to our minds, distinguished. Furthermore, in the Witt case, *supra*, the court said:

"The preferred claim, in the event of insolvency of the bank, is a *necessary incident* to the collection and payment of checks and other instruments." (Italics ours.)

We do not believe that this statement is necessarily correct. In other words, it is not necessary to expedite and simplify, that they be preferred claims. They must be classified, which they have been in this state under the 1925 statute, prior to the 1931 act. It does not follow that a contemplation of the expeditious means or simplification for the payment of checks would necessarily require that any of such checks be declared a trust fund and given preference, not only upon the funds in the bank, but upon all the assets of the bank, or that they in effect be given a preferred lien on all the assets of the bank; a different situation than that considered in *In re Crane*, 27 Ida. 671, 151 Pac. 1006, L. R. A. 1918A, 942, and *State v. Pasta*, 44 Ida. 671, 258 Pac. 1075.

Appellant further refers to *State v. Dolan*, 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259, as holding the title sufficient. If we attempt to superimpose the analysis of the title therein, page 702, on the title and body of the act under consideration herein, there is nothing in this title to cover preferences or the imposition of the trust declared on *all* the assets of the defunct bank, nor the matter of dishonor of certain items. The court therein said:

"So far as this court is concerned, it has been determined that the title should indicate the general scope and purpose of the legislative enactment, and be so comprehensive as to give notice of such proposed legislation. The title should not be of such a character as to mislead or deceive, either the law-making body, or the public, as to the legislative intent. It should not cover legislation which is contradictory or not connected with or related to the general subject stated in

the act. It should be broad enough to cover the subjects dealt with in the act, but not too broad, so as to indicate an intention to legislate upon a subject which the body of the act falls short of accomplishing, or departs therefrom."

and we do not think the ordinary legislator or person would have been led by the title herein to consider that the act probably dealt with, or prescribed preferences.

In *Hailey v. Huston*, 25 Ida. 165, 136 Pac. 212, the court said:

"The title to said appropriation bill would not give to any member of the legislature or to any other person any inkling of a purpose to increase a salary. That section of the constitution which provides that every act shall embrace but one subject and matters properly connected therewith, and that such subject shall be expressed in the title, was for the purpose of giving the members of the legislature as well as citizens generally notice of the purpose and object of the bill, and provides for titles to all bills as well as for a unity of title and subject matter. Said appropriation in the general appropriation bill would not and could not amend the statute fixing the salary of the officer referred to."

*Shoshone Highway Dist. v. Anderson*, 22 Ida. 109, 125 Pac. 219, and *Boise City v. Baxter*, 41 Ida. 368, 238 Pac. 1029, dealt rather with unity of subject matter than comprehensiveness of title.

If the title herein was as enlightening and suggestive of the complete purpose and effect of the act as those considered and upheld in *Smallwood v. Jeter*, 42 Ida. 169, 244 Pac. 149,[1] *Utah Power & Light Co. v. Pfost*, 52 Fed. (2d)

---

[1] "To regulate auto transportation companies; defining 'auto transportation company'; providing that all auto transportation companies shall register with the department of law enforcement and file with that department liability and property damage insurance policies or surety bonds in certain designated amounts, providing compensation for injury to person or property; providing for the issuance and revocation of permits to auto transportation companies; providing for a monthly report of the gross earnings of such companies to the department of law enforcement and the payment of

226,[2] and *Johnson v. Barrett Auto Co.*, 51 Ida. 95, 4 Pac. (2d) 344,[3] there would be no cause for complaint as to its insufficiency.

Analyzing the Witt case, *supra*, *Jackson v. Gallet*, 39 Ida. 382, 228 Pac. 1068, *Katz v. Herrick*, 12 Ida. 1, 86 Pac. 873, and *Turner v. Coffin*, 9 Ida. 338, 74 Pac. 962, and other holdings relative to the insufficiency of titles (*Gerding v. Board of County Commrs.*, 13 Ida. 444, 90 Pac. 357, *State v. Butterfield Livestock Co.*, 17 Ida. 441, 106 Pac. 455, 134 Am. St. 263, 26 L. R. A., N. S., 1244, *In re Edwards*, 45 Ida. 676, 266 Pac. 665), leads to the conclusion that the title here is insufficient. Therefore, the act not becoming operative until the adoption of the code, did not govern the transactions set forth in the complaint (sec. 14,

---

a monthly fee of 5% of such gross earnings; providing for the payment of such fees into the state highway fund and their appropriation for the administration and enforcement of the highway laws and the maintenance of state highways; providing for the right of inspection of the books of such companies by the department of law enforcement; making a violation of any of the provisions of this act a misdemeanor; and repealing all acts and parts of acts in conflict herewith."

[2] "Levying a license tax of one half mill per kilowatt hour on electricity and electrical energy generated, manufactured or produced in the state of Idaho for barter, sale or exchange; and providing for the collection and distribution of such tax; and for forms and procedure to be used and followed; requiring reports of the production of electricity and electrical energy and the furnishing of equipment for measuring same; prescribing penalties for violation of this act; exempting from such license tax the electricity and electrical energy actually used for pumping water for irrigation purposes on lands in the state of Idaho and providing that such exemptions shall accrue to the benefit of the consumer of such electricity and electrical energy; prescribing the duties of the state commissioner of law enforcement under this act, requiring him to give a bond for the faithful performance of said duties and fixing the amount thereof, and making an appropriation with which to carry out its purposes."

[3] "Amending sections 7065, 7066, 7067 and 7095 of the compiled statutes providing for manner of commencing actions in probate and justice courts, and repealing section 7071 of the compiled statutes."

chap. 60, Sess. Laws 1931, now sec. 25–1314, I. C. A.), and since the complaint as drawn is based solely upon this statute, it is unnecessary to consider whether the substance is unconstitutional, since it does not apply, nor whether appellant is entitled to relief in the absence of the statute, since the complaint was not drawn on that theory.

Judgment affirmed; costs to respondents.

Morgan, Holden and Wernette, JJ., concur; Budge, C. J., dissents.