(No. 6157.    April 19, 1935.)

TWIN FALLS BANK AND TRUST COMPANY, a Corporation, Respondent, v. P. J. PRINGLE, Appellant.

[43 Pac. (2d) 515.]

Walters, Parry & Thoman and J. R. Keenan, for Appellant.

John W. Graham, Frank L. Stephan and J. H. Blandford for Respondent.

MORGAN, J.—During ten years or more immediately prior to and on December 2, 1931, the banks of the City of Twin Falls were organized into a clearing house association. Section 9 of the articles was:

"The hour for making exchanges shall be 10.30 o'clock A. M. of each business day, (except on the last business day of each calendar month when it shall be 9.30 A. M.) when the Clearing House clerks from the several member banks shall report with their respective demands, separately made out against each member in detail and the totals summed up. The work of clearing shall not be delayed longer than ten minutes after 10.30 A. M. (9.30 on the last day of the month) on account of the failure of any bank to be represented at that time. At 10.45 o'clock (9.45 on the last day of the month) the settling clerks shall return for settlement, when the bank which at the time is acting as Clearing House bank shall pay the creditor banks in Salt Lake City exchange for the balance due them, and shall receive payment in Salt Lake City exchange from the debtor banks for the balances due from them."

When organized it was composed of four members, but for some time prior thereto and on December 2, the First National Bank of Twin Falls and respondent alone remained in business and they constituted the association. They had adopted the practice of ascertaining, by telephone, the amount of balance due from one bank to the other, and it was paid by draft directly to the bank entitled to it.

On December 2, appellant deposited in respondent bank three checks aggregating $4,490, drawn by another on the First National Bank, and was credited by respondent with that amount and given a duplicate deposit slip showing such credit. On the back of the slip was printed the following:

## "IMPORTANT

"In receiving items for deposit or collection this Bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This Bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit and each correspondent so selected shall not be liable except for its own negligence. This Bank or its correspondents may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this Bank not good at close of business on day deposited.

"TWIN FALLS BANK & TRUST CO.

"Twin Falls, Idaho."

On December 3, when the banks cleared, respondent had checks and drafts drawn on the First National Bank, totaling $21,308.45, which included the checks deposited by appellant; the First National Bank had checks and drafts drawn on respondent totaling $11,673.82, and gave respondent, in payment of the balance, a draft, as required by the articles of association, drawn on Continental National Bank & Trust Company, of Salt Lake City, Utah, for $9,634.63. The draft was mailed by respondent to Federal Reserve Branch Bank of Salt Lake on December 3, for presentation and was delivered, in the regular course of mail, on December 4. It was not paid because of the failure of the First National Bank, which did not open for business on the morning of December 4.

December 4, appellant drew and presented to respondent for payment a check for practically his entire balance, which was paid. Thereafter demand was made by respondent on appellant, and by him refused, for his proportionate part of the loss due to the refusal of the Continental National

Bank & Trust Company to pay the draft on it by the First National Bank, and this suit was commenced to collect it. The case was tried to the judge, without a jury, and resulted in judgment for plaintiff. This appeal is from the judgment.

Idaho Sess. Laws, 1931, chap. 60, sec. 1 (b), defines the word item, as used in that chapter, to mean "any check, note or other instrument providing for the payment of money." Sec. 2 contains the following:

"Except as otherwise provided by agreement . . . . where an item is deposited or received for collection, the bank of deposit shall be agent of the depositor for its collection . . . . and any credit given by any such agent . . . . shall be revocable until such time as the proceeds are received in actual money or an unconditional credit given on the books of another bank, which such agent has requested or accepted. Where any such bank allows any revocable credit for an item to be withdrawn, such agency relation shall nevertheless continue except the bank shall have all the rights of an owner thereof against prior and subsequent parties to the extent of the amount withdrawn."

It is provided in sec. 9 of that chapter:

"Where ordinary care is exercised, any agent collecting bank may receive in payment of an item without becoming responsible as debtor therefor, whether presented by mail, through the clearing house or over the counter of the drawee or payor, in lieu of money, either (a) the check or draft of the drawee or payor upon another bank . . . . or (c) such method of settlement as may be customary in a local clearing house or between clearing banks or otherwise . . . . "

Appellant insists said chapter is void because its title is insufficient to meet the requirements of Idaho Constitution, art. 3, sec. 16. The chapter has been codified in I. C. A., Title 25, chap. 13, but the transactions under consideration occurred before the code became effective, so the sufficiency of the title is open to question. (*Federal Re-*

*serve Bank v. Citizens Bank & Trust Co.*, 53 Ida. 316, 23 Pac. (2d) 735.) It is:

"An act to expedite and simplify the collection and payment by banks of checks and other instruments for the payment of money."

Idaho Constitution, art. 3, sec. 16, provides:

"Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

In *Federal Reserve Bank v. Citizens Bank & Trust Co.*, above cited, we held the part of chapter 60 which purported to provide for the allowance of preference of a certain class of claims against insolvent banks to be void because that subject was not included in the title. The ruling holding void the portion of the chapter not included in the title is not fatal to the portion which is included, because of the provision in the section of the constitution above set out that "such act shall be void only as to so much thereof as shall not be embraced in the title."

Appellant argues that the title is deceptive and misleading. While it is stated in broad, general terms, it is not subject to just criticism that it is deceptive or misleading. It is sufficient to notify the reader of the nature of the part of the act relating to the collection and payment by banks of checks and other like instruments. In *re Crane*, 27 Ida. 671, 688, 151 Pac. 1006, 1010, L. R. A. 1918A, 942, it is said:

"Necessarily the title to an act must be brief. The object of the title is to give a general statement of the subject matter, and such a general statement will be sufficient to include all provisions of the act having a reasonable connection with the subject matter mentioned and a reasonable tendency to accomplish the purpose of the act. The object of the title is not to state the reason for the passage of the

act, or to give an index to its contents, but to give a general statement of the subject matter of the act.''

■ Appellant urges that our law conflicts with that of the United States (U. S. C. A., Title 12, seć. 194) on the subject of priority in the payment of claims in the liquidation of insolvent banks. The conflict of laws, if one exists, does not arise in this case. The manner in which the receivership of the First National Bank has been, or is being, conducted is not in issue.

An effort was made to prove an agreement whereby the bank did not receive the checks for collection, but purchased them. Appellant testified to the effect that when he made the deposit he asked the vice-president if the money was available for him right away, and was told it was; also that he told the vice-president the purposes for which he desired to use the money. His explanation as to what actuated him in the transaction and why he deposited the checks in respondent bank instead of cashing them at the First National Bank is as follows:

''Well, there was rumors about the First National Bank that had come to me several times, that it might be in rather bad shape—now, I say 'might'—and I didn't want to accept that check—that deposit—conditionally at all, and wouldn't. . . . .

''I told him why I wanted the money from those checks because I was rather—I didn't want to take chances on those checks because I had understood about the First National Bank; that was the reason I took the precaution. . . . .

''Q. Well, after you received the check from Mr. Sande you did not need to go to the First National Bank—you didn't want to go to the First National Bank and take out that much money at one time?

''A. I wouldn't have cared to have went only from the looks of it towards the bank; it might have caused a run on the bank, and they would say 'what's the matter with

Pringle.' I done it as a protection to the Bank. I didn't want to do that before a crowd if anybody seen me.''

There is conflict in the testimony as to what occurred at the time appellant deposited the checks. It is doubtful if the evidence favorable to his contention, that there was an agreement whereby the checks were purchased by respondent and not deposited with it for collection, would be sufficient to sustain it, even in the absence of a conflict.

Evidence was introduced by respondent establishing a custom among the banks in and about Twin Falls to accept checks for collection and credit them to the depositor's account, reserving the right to charge them back to the depositor unless collected. This custom is not violative of, but is in conformity to, 1931 Sess. Laws, Chapter 60.

The burden was on appellant to prove an agreement whereby the deposit was not for collection, and that there was a purchase by respondent of the checks. In *Fischer v. First National Bank of Sandpoint, ante,* p. 251, 40 Pac. (2d) 625, 626, we said:

''As a general proposition, every commercial contract, including those in connection with the business of banking, is deemed entered into with the understanding that usage and custom, in regard to the particular matter of the contract, becomes a part of the transaction itself, unless the contrary appears.''

The evidence was sufficient to justify the trial judge in finding the deposit was made by appellant in respondent bank for collection, and that there was no agreement to the contrary. Therefore, 1931 Sess. Laws, chap. 60, sec. 2, applied to the transaction and made credit given to appellant against the deposit revocable when the proceeds of such checks were not received by respondent.

On December 4, when the First National Bank failed to open for business, many of the depositors in respondent bank presented checks to it demanding the payment of their deposits. Shortly after respondent opened for business that day its lobby was filled with its depositors; lines of waiting depositors were formed seeking to withdraw their money,

and considerable excitement and uneasiness was manifested among the depositors and officers and employees of the bank. At that time appellant presented his check to respondent's assistant cashier and withdrew $3,000 being practically all that remained in his deposit composed of the three checks on the First National Bank which were not paid because of its failure. The evidence shows the assistant cashier was nervous and excited and did not know, when he paid appellant's check, that his balance was created by the deposit of checks on the First National Bank which had not been collected.

The payment of appellant's check, on December 4, did not amount to an election to purchase the checks deposited by him on December 2. At most it was a circumstance, admissible in evidence, tending to show a purchase had been made at the time of deposit and that the bank so understood the transaction. However, considering the circumstances surrounding the cashing of the $3,000 check, it is clear it was paid inadvertently and through lack of knowledge on the part of the assistant cashier of the nature of the deposit.

It is true the assistant cashier could have ascertained the nature of the deposit, and appellant insists his failure to do so was negligence imputable to the bank. Assuming the payment of appellant's check was made by respondent due to negligence of its assistant cashier, that does not change the contractual relation of the parties so as to transform a deposit of checks for collection into a purchase and sale of them, nor does it deprive respondent of its right of action against appellant to recover the money.

The judgment is affirmed. Costs are awarded to respondent.

Givens, C. J., and Budge, Holden and Ailshie, JJ., concur.

Petition for rehearing denied.